**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARIA N. GRACIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2011 CV 7604 |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| SIGMATRON INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

---

**SIGMATRON INTERNATIONAL, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56**

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION ....................................................................................... 1

LEGAL ARGUMENT ................................................................................. 3

I.    SUMMARY JUDGMENT SHOULD BE GRANTED IN SIGMATRON'S FAVOR ON ALL OF PLAINTIFF'S CLAIMS.................................................. 3

    A.    Rule 56 Summary Judgment Standard.................................................... 3

    B.    SigmaTron Should be Awarded Summary Judgment on Count I of Plaintiff's Complaint Based on Sex Discrimination and National Origin Discrimination.................................................................................... 3

        1.    *Plaintiff has no direct evidence of sex discrimination or national origin discrimination* ............................................................... 4

        2.    *Plaintiff cannot prove her case by the indirect method* ............................. 6

            a.    SigmaTron disciplined Plaintiff for legitimate, nondiscriminatory reasons ........................................................... 7

            b.    No Similarly Situated Employees Not In Plaintiff's Protected Classes (Female/Hispanic-American) Were Treated Differently Under Similar Circumstances ...................... 10

    C.    SigmaTron Should Be Awarded Summary Judgment On Count I of Plaintiff's Complaint Based on Sexual Harassment Because the Alleged "Harassment" was Neither Objectively Hostile Nor Gender-Based.................... 11

        1.    *Plaintiff's workplace was not objectively hostile* .................................... 14

        2.    *Plaintiff's Harassment Allegations Have No Connection to Her Gender* 15

        3.    *SigmaTron Cannot Be Held Liable for Any Alleged Harassment* ............ 15

            a.    Mr. Silverman was not Plaintiff's "Supervisor" ........................... 15

            b.    SigmaTron was not negligent in discovering or remedying the alleged harassment ............................................................... 16

    D.    SigmaTron Should be Awarded Summary Judgment on Plaintiff's Allegations of Retaliation ...................................................................... 17

CONCLUSION ......................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Wal-Mart Stores, Inc.*,
  324 F.3d 935 (7th Cir. 2003) .................................................................................. 6

*Ajayi v. Aramark Vus. Servs., Inc.*,
  336 F.3d 520 (7th Cir. 2003) .................................................................................. 10

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................ 3

*Bio v. Federal Express Corp.*,
  424 F.3d 593 (7th Cir. 2005) .................................................................................. 10

*Boumehdi v. Plastag Holdings, LLC*,
  489 F.3d 781 (7th Cir. 2007) .................................................................................. 11

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................................ 3

*Coleman v. Donahoe*,
  667 F.3d 835 (7th Cir. 2012) .................................................................................. 17

*Crady v. Liberty Nat'l Bank & Trust Co.*,
  993 F.2d 132 (7th Cir. 1993) .................................................................................. 7

*Egonmwan v. Cook County Sheriff's Department*,
  602 F.3d 845 (7th Cir. 2010) .................................................................................. 4

*Ellise v. CCA of Tennessee LLC*,
  650 F.3d 640 (7th Cir. 2011) .................................................................................. 14

*Everroad v. Scott Truck Sys.*,
  604 F.3d 471 (7th Cir. 2010) .................................................................................. 7

*Fleishman v. Continental Casualty Company*,
  698 F.3d 598 (7th Cir. 2012) .................................................................................. 6

*Gorence v. Eagle Food Ctrs., Inc.*,
  242 F.3d 759 (7th Cir. 2001) .................................................................................. 6

*Harris v. Forklift Sys., Inc.*,
  510 U.S. 17 (1993) .................................................................................................. 14

*Hilt-Dyson v. City of Chicago*,
  282 F.3d 456 (7th Cir. 2002) .................................................................................. 14

*Jackson v. J.P. Morgan Chase Nat'l Corp. Servs., Inc.*,
    2010 WL 2574217 (N.D. Ill. June 22, 2010) .......................................................................... 11

*Kennedy v. Schoenberg, Fischer & Newman, Ltd.*,
    140 F.3d 716 (7th Cir. 1998) ..................................................................................................... 7

*Kidwell v. Eisenhauer*,
    679 F.3d 957 (7th Cir. 2012) ................................................................................................... 17

*Leitgen v. Fransciscan Skemp Healthcare, Inc.*,
    630 F.3d 668 (7th Cir. 2011) ................................................................................................... 17

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) .................................................................................................................... 6

*Montgomery v. American Airlines, Inc.*,
    626 F.3d 382 (7th Cir. 2010) ................................................................................................... 15

*Nagle v. Vill. of Calumet Park*,
    554 F.3d 1106 (7th Cir. 2009) ................................................................................................... 6

*Naik v. Boehringer Ingelahim Pharm.*,
    627 F.3d 596 (7th Cir. 2010) ................................................................................................ 4, 6

*Nobles v. Nalco Chemical Co.*,
    2004 WL 419900 (N.D. Ill. Mar. 2, 2004 .......................................................................... 14, 16

*Oest v. Illinois Department of Corrections*,
    240 F.3d 605 (7th Cir. 2001) ..................................................................................................... 7

*Patton v. Indianapolis Public School Bd.*,
    276 F.3d 334 (7th Cir. 2002) ................................................................................................... 15

*Radue v. Kimberly-Clark Corp.*,
    219 F.3d 612 (7th Cir. 2000) ............................................................................................... 4, 11

*Rhodes v. Illinois Dept. of Transp.*,
    359 F.3d 498 (7th Cir. 2004) ................................................................................................... 15

*Silverman v. Board of Educ. of City of Chicago*,
    637 F.3d 729 (7th Cir. 2011) ................................................................................... 4, 6, 17, 18

*Smart v. Ball State Univ.*,
    89 F.3d 437 (7th Cir. 1996) ....................................................................................................... 7

*Tomanovich v. City of Indianapolis*,
    457 F.3d 656 (7th Cir. 2006) ................................................................................................... 18

*Whittaker v. N. Ill. Univ.*,
424 F.3d 640 (7th Cir. 2005) ................................................................................... 14

## Statutes

42 U.S.C. § 2000e-5(e) ............................................................................................... 13

42 U.S.C. § 2000e-5(f)(1) ........................................................................................... 13

## Rules

Fed. R. Civ. P. 56 ..................................................................................................... 1, 3

Defendant SigmaTron International, Inc. ("SigmaTron"), for its Memorandum in Support of its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, respectfully states as follows:

## INTRODUCTION

This Court should grant SigmaTron's Motion for Summary Judgment and dismiss Plaintiff's action. Plaintiff purports to state a claim for: Count I-Sex Discrimination, National Origin, Harassment, and Hostile Work Environment; and Count II-Retaliation. Plaintiff's claims fail for one important reason: a lack of evidence. SigmaTron terminated Plaintiff's employment on December 5, 2008 for cause. At the time of her termination, Plaintiff was an Assembly Line Supervisor and, in early December, 2008, after an investigation, it was determined that Plaintiff, who had been trained on how to correctly solder components, was knowingly supervising employees who were improperly soldering components for customer orders. The investigation revealed that when confronted by her friend and co-worker about the improper soldering going on under her watch, Plaintiff did nothing to stop her workers. Further, when she was confronted by the Corporate Director of Human Resources and the Executive Vice President of SigmaTron about what had occurred, Plaintiff not only admitted her failure to properly supervise her employees, but she also displayed a cavalier attitude with respect to the matter. Due to the graveness of Plaintiff's violations (jeopardizing the safety and relations with a long standing customer), SigmaTron terminated Plaintiff.

There simply exists no evidence (direct or indirect) to support Plaintiff's sex discrimination claim or her national origin discrimination claim. As specifically evidenced above, Plaintiff cannot show that she was meeting SigmaTron's legitimate job expectations nor can she point to any similarly situated SigmaTron employees who were not in her protected

classes (Female/Hispanic-American) and who were treated differently under similar circumstances. The evidence shows that Plaintiff did not take well to the Executive Vice President's enforcement of long established rules that had been laxly enforced under the previous manager. As a result, Plaintiff's working relationship with Mr. Silverman (the alleged harasser) became strained because she was disciplined for violating SigmaTron's policies. Plaintiff admits that she violated SigmaTron's policies and that every write-up she received from Mr. Silverman was warranted (being tardy 90% of the time over a three month period; and then being tardy 20 times over the next three month period; taking excessively long breaks in other department's workstations; and failing to have appropriate customer specifications out on the Assembly Line as required). Despite her admissions, Plaintiff claims that the discipline was the result of her sex or her national origin; there is simply no evidence to support her claims. Accordingly, summary judgment in favor of SigmaTron is warranted on Count I of Plaintiff's Complaint to the extent it is based on sex discrimination and national origin discrimination.

Judgment for SigmaTron is also appropriate on Count I to the extent it is based on sexual harassment. Plaintiff's evidence, even if true, fails to establish that Plaintiff's workplace was objectively hostile. Further, Plaintiff cannot show that her allegations of harassment have any connection to her gender. Moreover, Plaintiff cannot demonstrate that Mr. Silverman was Plaintiff's "Supervisor" because Mr. Silverman did not have the power to hire, promote, conduct performance reviews, suspend, or terminate Plaintiff, and so Count I of Plaintiff's Complaint based on sexual harassment and a hostile environment fails.

As with Plaintiff's discrimination claims, Plaintiff's retaliation claim should be dismissed because there is no evidence, direct or indirect, that shows that SigmaTron terminated Plaintiff because she filed a baseless EEOC claim. Consequently, because dismissal of each of Plaintiff's

2

claims is warranted, summary judgment in favor of SigmaTron on Count I and Count II of Plaintiff's Complaint is appropriate.

## LEGAL ARGUMENT[1]

I. **SUMMARY JUDGMENT SHOULD BE GRANTED IN SIGMATRON'S FAVOR ON ALL OF PLAINTIFF'S CLAIMS**

  A. **Rule 56 Summary Judgment Standard**

  The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (internal quotes omitted). A motion for summary judgment under Rule 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;…The judge's inquiry, therefore, unavoidably asks where reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Id.* at 252.

  B. **SigmaTron Should be Awarded Summary Judgment on Count I of Plaintiff's Complaint Based on Sex Discrimination and National Origin Discrimination**

  Count I of the Complaint is based, in part, upon allegations of Title VII sex discrimination and national origin discrimination. To survive a motion for summary judgment

---

[1] All citations to "Facts" refer to SigmaTron's 56.1 Statement of Material Undisputed Facts filed concurrently with this Memorandum.

on her Title VII sex discrimination claim and her national origin discrimination claim, Plaintiff must produce evidence that would allow a reasonable jury to find that but for her sex and but for her national origin, SigmaTron would not have subjected her to an adverse employment action. *Egonmwan v. Cook County Sheriff's Department*, 602 F.3d 845, 850 (7th Cir. 2010). An employee suing under Title VII may show discrimination directly or indirectly. *Naik v. Boehringer Ingelahim Pharm.*, 627 F.3d 596, 599 (7th Cir. 2010); *Egonmwan*, 602 F.3d at 849-50.

1. ***Plaintiff has no direct evidence of sex discrimination or national origin discrimination***

Under the direct method, Plaintiff "must offer either direct evidence that would prove the fact in question—the discriminatory intent—without reliance on inference or presumption, or a 'convincing mosaic' of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Silverman v. Board of Educ. of City of Chicago*, 637 F.3d 729, 733-34 (7th Cir. 2011) (internal citations omitted). In other words, "[d]irect evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). No such evidence exists in this case.

Plaintiff supports her sex discrimination claim and her national origin discrimination claim by relying on the following allegations of adverse employment actions:

- On July 21, 2008, Greg Fairhead, Executive Vice President of SigmaTron, and Mr. Silverman spoke to Plaintiff about her poor attendance practices as she had been tardy in excess of 90% of the time during the preceding three months. Plaintiff was informed that her tardiness would no longer be tolerated at SigmaTron and if she continued to be tardy, it would subject her to further disciplinary action up to and including immediate termination. (Facts ¶¶ 2, 13).

- On October 15, 2008, Plaintiff was given an Employee Disciplinary Notice and suspended for two days since she was tardy on 20 more occasions in the three months that followed the July 21, 2008 meeting. (Facts ¶¶ 14-15).

- On October 23, 2008, Plaintiff was spoken to after she took a 35 minute break from 9:15 AM-9:50 AM in the purchasing department and was told that she may not sit in purchasing during her break period. (Fact ¶ 16).

- On October 30, 2008, Plaintiff was spoken to after it was discovered during a very important plant tour on October 28, 2008, that Plaintiff had failed to display certain required visual aids and customer instructions, for which she was responsible, on the Assembly Line. (Fact ¶ 17).

- On October 30, 2008, Plaintiff was spoken to after she took 70 minutes for lunch although she was only allowed 60 minutes. (Fact ¶ 18).

- On December 5, 2008, Plaintiff was terminated for cause after:

  o Mr. Trujillo, Plaintiff's close associate observed that Plaintiff's assembly line workers were knowingly failing to follow the strict standard of solder technology on a customer's assembly in violation of both SigmaTron's policies and the customer's specifications. (Fact ¶ 19).

  o Mr. Trujillo saw that Plaintiff was not going to stop the improper action of her workers and knew that this activity was totally unacceptable to SigmaTron and most likely in violation of the customer's specification, so he told Mr. Silverman what had happened. (Facts ¶¶ 19, 21).

  o Mr. Silverman then confirmed that Plaintiff was mixing the solder types on a customer's assembly and after having the production immediately stopped and segregating the product that had been mixed, Mr. Silverman told Mr. Fairhead what had happened. (Fact ¶ 22).

  o Mr. Fairhead went to the area where the incident had occurred and questioned the employees who were out on the assembly floor when the incident occurred and had them explain to him what had taken place. (Fact ¶ 23).

  o Mr. Fairhead met with Mr. Trujillo the next day and Mr. Trujillo confirmed that: 1) Plaintiff was knowingly mixing solder types in the assembly process; 2) Mr. Trujillo had talked to Plaintiff about the issue; 3) Plaintiff did not stop and correct the issue; 4) Mr. Trujillo knew that this activity was totally unacceptable to the company and most likely in violation of the customer's specification; and 5) Mr. Trujillo had told Mr. Silverman about it. (Fact ¶ 24).

    o    Mr. Fairhead and Ms. Miedema met with Plaintiff about the Incident, at which time, Plaintiff admitted that her workers had been mixing solders and that, based on her training; she knew that allowing her workers to mix the solders was unacceptable. (Fact ¶ 25).

None of these allegations indicate that Plaintiff was suspended or terminated because she was a female nor do they create a mosaic of circumstantial evidence that directly shows that SigmaTron's termination of Plaintiff was discriminatory. *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003). Rather, the facts show that SigmaTron only disciplined Plaintiff when she violated SigmaTron's policies. Because there is no "real link between the bigotry and an adverse employment action", Plaintiff's claim must fail. *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001); *see also, Fleishman v. Continental Casualty Company*, 698 F.3d 598, 603 (7th Cir. 2012) ("[F]undamentally the plaintiff must connect the circumstantial evidence to the employment action such that a reasonable juror could infer the employer acted for discriminatory reasons.").

## 2. *Plaintiff cannot prove her case by the indirect method*

Because there exists no substantially strong evidence to support Plaintiff's sex discrimination or national origin claims, which is required under the direct method, *see Silverman*, 637 F.3d at 734; *see also, Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1118 (7th Cir. 2009); Plaintiff must prove her Title VII sex discrimination and national origin discrimination claims by the indirect method using the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Naik*, 627 F.3d at 599-600 (finding *McDonnell Douglas* test applicable to Title VII claims).

Under the indirect method of proof, Plaintiff must first establish a *prima facie* case of sex discrimination and national origin discrimination by demonstrating separately that: (1) she is a member of a protected class; (2) her job performance met with SigmaTron's legitimate job

expectations; (3) she suffered an adverse employment action; and (4) similarly situated others not in her protected classes received more favorable treatment. *Everroad v. Scott Truck Sys.*, 604 F.3d 471, 477 (7th Cir. 2010) (citing *McDonnell Douglas*, 411 U.S. at 802). If Plaintiff succeeds in proving each element, then the evidentiary burden shifts to SigmaTron to articulate a legitimate, non-discriminatory reason for Plaintiff's termination. When SigmaTron does so, the discriminatory presumption dissolves and the burden shifts back to Plaintiff to show that SigmaTron's given reason is pretext for sexual discrimination and national origin discrimination. *Kennedy v. Schoenberg, Fischer & Newman, Ltd.*, 140 F.3d 716, 723 (7th Cir. 1998).

> a. SigmaTron disciplined Plaintiff for legitimate, nondiscriminatory reasons

While Plaintiff may complain that she suffered multiple adverse employment actions, only Plaintiff's suspension and termination arguably constitute actionable adverse employment actions under the law. *Oest v. Illinois Department of Corrections*, 240 F.3d 605 (7th Cir. 2001). "Not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). To be actionable, the adverse action must be more than a "mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993). Plaintiff admits that she committed each of the violations for which SigmaTron issued discipline, (Facts ¶¶ 14, 25); this alone demonstrates that the disciplinary actions were objectively appropriate. First, Plaintiff was late 90% of the time over a three month period; then, after being told that such tardiness would no longer be tolerated and that she should not be late again, Plaintiff continued to be late on 20 more occasions over the next three months; and was subsequently suspended for three days. (Facts ¶¶ 13-15). It goes without saying that being late 90% of the time over a three month period and continuing to be

late on 20 more occasions over the next three months is egregious and warranting of significant disciplinary action.

Plaintiff's conduct that led to her termination was even more egregious and warranting of significant disciplinary action. Plaintiff violated SigmaTron's company rules and jeopardized the safety of its products and its relations with its customers. It is extremely critical in SigmaTron's business that SigmaTron follow its customer's specifications exactly. (Fact ¶ 9). The customer's product performance, as well as, SigmaTron's reputation/success in the industry depends on this occurring on each and every assembly manufactured. (Fact ¶ 9). If specifications are not followed according to the customer's written requirements, then SigmaTron can be held liable for the damages/cost of the product, which can be quite significant. (Fact ¶ 9). Further, the contamination of solder types can be very expensive; the solder in one machine alone can cost over $20,000 to replace due to contamination. (Fact ¶ 9). SigmaTron regularly conducts training classes, taught by an industry recognized/certified trainer, to keep employees informed and current with job classifications. (Fact ¶ 10).

At the time of her termination, Plaintiff had been an Assembly Supervisor for over a year and a half and just a few months before her termination; Plaintiff had completed a Component Preparation class that focused on the critical difference between Leaded Assemblies, Lead Free Assemblies, and RoHS Compliance (Reduction of Hazardous Substances) and the important characteristics/distinctions of each. (Fact ¶¶ 6, 11). As the Assembly Supervisor, Plaintiff had day-to-day responsibility for the output and quality of SigmaTron's productions, the directing of team members, and the training of team members. (Fact ¶ 7). Plaintiff had the authority as an Assembly Supervisor to stop production due to quality, safety, and customer concerns. (Fact ¶ 8). Plaintiff knew it was important to follow customer's specifications, had signed her initials

8

(MG) that she had received the customer's requirement/assembly instructions that clearly specified that leaded solder only be used. (Fact ¶ 26).

On December 4, 2008, Eduardo Trujillo, Plaintiff's close associate/friend observed that Plaintiff's assembly line workers were knowingly failing to follow the strict standard of solder technology on a customer's assembly in violation of both SigmaTron's policies and the customer's specifications. (Fact ¶ 19). When Mr. Trujillo informed Plaintiff that he had observed that she was allowing products to be soldered incorrectly, Plaintiff did nothing to stop the action. (Fact ¶ 20). Mr. Trujillo knew that this activity was totally unacceptable to SigmaTron and most likely in violation of the customer's specification, so he immediately told Mr. Silverman what he had seen. (Fact ¶ 21). Once Mr. Silverman confirmed that Plaintiff was mixing the solder types on a customer's assembly, he had production immediately stopped; he segregated the product that had been mixed; and he reported the incident to Mr. Fairhead. (Fact ¶ 22). Mr. Fairhead went to the area where the incident had occurred and questioned the employees who were out on the assembly floor when the incident occurred and had them explain to him what had taken place. (Fact ¶ 23). Mr. Fairhead met with Mr. Trujillo the next day and Mr. Trujillo confirmed that: 1) Plaintiff was knowingly mixing solder types in the assembly process; 2) Mr. Trujillo had talked to Plaintiff about the issue; 3) Plaintiff did not stop and correct the issue; 4) Mr. Trujillo knew that this activity was totally unacceptable to the company and most likely in violation of the customer's specification; and 4) Mr. Trujillo had told Mr. Silverman about the incident. (Fact ¶ 24).

Mr. Fairhead then met with Ms. Miedema and Plaintiff about the Incident; during their discussion, Plaintiff admitted that her workers had been mixing solders, and based on her training, she knew that allowing her workers to mix the solders was unacceptable. (Fact ¶ 25).

On December 5, 2008, Mr. Fairhead terminated Plaintiff's employment with SigmaTron because of Plaintiff's admitted, knowing failure to require her production workers to adhere to customer specifications and company policies, and her unprofessional cavalier attitude towards her job responsibilities. (Fact ¶ 27). Accordingly, because there is no evidence to show that SigmaTron disciplined Plaintiff for illegitimate, discriminatory reasons, Count I of the Complaint based on allegations of sex discrimination and national origin discrimination should be dismissed.

>  b.  No Similarly Situated Employees Not In Plaintiff's Protected Classes (Female/Hispanic-American) Were Treated Differently Under Similar Circumstances

Furthermore, there is no evidence in the record that male or non-Hispanic counterparts were treated any differently than Plaintiff in similar situations. To be "similarly-situated" Plaintiff must identify a SigmaTron employee who is "directly comparable to [Plaintiff] in all material respects." *Bio v. Federal Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005). (internal citations omitted). When considering whether two employees are directly comparable, the Court will evaluate all factors it deems relevant given the context of the allegations, including, whether the employees: "(i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." *Ajayi v. Aramark Vus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003). The only potential person whom Plaintiff could suggest as a comparator would be Mr. Trujillo. However, like Plaintiff, Mr. Trujillo is of Hispanic national origin; therefore, Plaintiff's discrimination claim based on ethnicity must fail. (Facts ¶¶ 29-30). Further, at the time of Plaintiff's termination, Plaintiff was the only Assembly Supervisor at SigmaTron, (Fact ¶ 31),

and Mr. Trujillo was an Auto Insertion Supervisor and had none of the same job responsibilities as Plaintiff. (Fact ¶ 32).

Additionally, there is no evidence that Mr. Trujillo committed any of the same violations that Plaintiff committed and so the record does not show that SigmaTron treated Plaintiff and Mr. Trujillo differently. *Radue v. KimberlyClark Corp.*, 219 F.3d 612, 617-8 (7th Cir. 2000). Without any relevant comparators to support her sex discrimination or national origin discrimination claims, such claims must fail. See *Jackson v. J.P. Morgan Chase Nat'l Corp. Servs., Inc.*, 2010 WL 2574217, *9 (N.D. Ill. June 22, 2010) (citing, 602 F.3d at 849, and *Antonetti v. Abbott Laboratories*, 563 F.3d 587, 592 (7th Cir. 2009)).

Accordingly, because Plaintiff can neither establish a *prima facie* case nor in any way refute the legitimate, non-discriminatory reasons for her suspension or her termination, Plaintiff's sex discrimination and national origin discrimination claim cannot survive summary judgment.

**C.    SigmaTron Should Be Awarded Summary Judgment On Count I of Plaintiff's Complaint Based on Sexual Harassment Because the Alleged "Harassment" was Neither Objectively Hostile Nor Gender-Based**

Plaintiff cannot establish a *prima facie* case of sexual harassment because she cannot show that "(1) she was subjected to unwelcome harassment; (2) the harassment was based on her sex; (3) the harassment was sufficiently severe or pervasive so as to alter the condition of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 788 (7th Cir. 2007). Specifically, Plaintiff's harassment claim fails because her workplace was not objectively hostile and there was no connection between her working conditions and her gender. The events Plaintiff charges as harassing include:

11

- On the occasions Mr. Silverman brought pastries for SigmaTron staff, Mr. Silverman hand delivered a pastry directly to Plaintiff (which she accepted).

- On at least one occasion, Mr. Silverman insisted that Plaintiff attend and ride with him to the Industry Trade Show at the Rosemont Convention Center where SigmaTron had a booth on display.

- On at least one occasion, Mr. Silverman asked to stay at Plaintiff's home after a Cubs game so he could avoid the long drive to his home in Rockford.

- On more than one occasion, Mr. Silverman texted Plaintiff (sometimes at night) and asked if they should grab dinner or meet up.

- On one occasion, Mr. Silverman pulled on the turtle neck of Plaintiff's sweater.

- On one occasion in December 2007[2], Mr. Silverman called Plaintiff multiple times from a SigmaTron supplier's party in an effort to persuade her to join them at the party.

- Mr. Silverman forwarded 17 e-mails[3] (the "E-mails") to Plaintiff and others male SigmaTron employees that Plaintiff claims to be offensive including:

  o     1 e-mail on May 8, 2007 SMT-GRACIA0206-223
  o     1 e-mail on June 12, 2007 SMT-GRACIA0240
  o     6 e-mails on August 24, 2007 SMT-GRACIA0271-286, 288-290
  o     1 e-mail on August 31, 2007 SMT-GRACIA0309-310
  o     1 e-mail on September 12, 2007 SMT-GRACIA0312
  o     1 e-mail on November 14, 2007 SMT-GRACIA0345-346
  o     1 e-mail on November 15, 2007 SMT-GRACIA0347
  o     1 e-mail on December 10, 2007 SMT-GRACIA0378-0379
  o     1 e-mail on January 30, 2008-SMT-GRACIA0390
  o     1 e-mail on April 21, 2008 SMT-GRACIA0430-431
  o     1 e-mail on June 24, 2008 SMT-GRACIA0516
  o     1 e-mail on July 1, 2008 SMT-GRACIA0527

(Fact ¶ 33).

Mr. Silverman never told Plaintiff that he wanted to have sex with Plaintiff; nor did Mr. Silverman ever ask Plaintiff to have sex with him. (Fact ¶ 35). Mr. Silverman never told Plaintiff

---

[2] As discussed further below, Plaintiff is precluded from pursuing her claims based on 9 of the 17 E-mails because Plaintiff received them more than 300 days before the EEOC charge she filed on November 6, 2008.

[3] As discussed further below, Plaintiff is precluded from relying on this incident to support her claims based on 9 of the E-mails because Plaintiff received them more than 300 days before she filed her EEOC charge.

she was required to do anything when he gave her pastries (which she accepted) or asked her to the movies; there was no quid pro quo. (Fact ¶ 36). Plaintiff did not deem any of Mr. Silverman's text message to suggestive that Mr. Silverman wanted to have a sexual encounter with Plaintiff. (Fact ¶ 35). Plaintiff admits that she did not understand any of Mr. Silverman's text messages to be suggestive that he wanted to have a sexual encounter with Plaintiff. (Fact ¶ 34). With respect to the E-mails, Plaintiff never complained to Mr. Silverman that she did not want to receive them or even that she did not want to receive them. (Fact ¶ 37). Plaintiff also never complained to Ms. Miedema, the Corporate Director of Human Resources, about any of the E-mails, text messages, invitations (to sleep over after Cubs games, to go to the movies), or other alleged conduct (pulling of the neckline of Plaintiff's sweater) she now alleges was upsetting to her. (Facts ¶¶ 40-43).

It is important for the Court to take note that many of the incidents upon which Plaintiff bases her sexual harassment claim took place outside of the 300 day period set forth in 42 U.S.C. §§ 2000e-5(e), 5(f)(1) . Accordingly, Plaintiff is precluded from relying on 13 E-mails (1 e-mail on May 8, 2007; 1 e-mail on June 12, 2007; 6 e-mails on August 24, 2007; 1 e-mail on August 31, 2007; 1 e-mail on September 12, 2007; 1 e-mail on November 14, 2007; 1 e-mail on November 15, 2007; 1 e-mail on December 10, 2007) and at least the December 2007 incident (where Plaintiff alleged that Mr. Silverman called Plaintiff multiple times from a SigmaTron's supplier party in an effort to persuade her to join him and another SigmaTron employee at the party) to support her sexual harassment claim. Fact ¶ 33.

However, even if the Court considers all of Plaintiff's E-mails and all of the incidents Plaintiff relies on to support her sexual harassment claim, they do not rise to level of severe and pervasive conduct. *Nobles v. Nalco Chemical Co.*, 2004 WL 419900, at *12 (N.D. Ill. Mar. 2,

2004) (J. Pallmeyer) (finding that a hostile work environment did not exist where the plaintiff forwarded only one inappropriate e-mail to the Human Resources Department and did not complain to the Human Resources Department about many other e-mails that included a man dancing nude on a pole; an African-American as illiterate; jokes about husbands and wives; "Dumb Men Jokes" and President Clinton as an African-American).

1. *__Plaintiff's workplace was not objectively hostile__*

Plaintiff cannot survive this Motion for Summary Judgment because she cannot establish that her work environment "was both objectively and subjectively offensive—that...'a reasonable person would find [Plaintiff's work environment] hostile or abusive, and that [Plaintiff] in fact did perceive [it] to be so.'" *Ellise v. CCA of Tennessee LLC*, 650 F.3d 640, 647 (7th Cir. 2011) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998); *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 645 (7th Cir. 2005). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Isolated and minor incidents of questionable conduct generally will not warrant a conclusion of sexual harassment or hostile work environment. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002) (holding acts of rubbing back and squeezing shoulder that involved no threats, intimidation, or humiliation did not constitute actionable harassment). The occasional vulgar banter, tinged with sexual innuendo of coarse or boorish workers generally does not create a work environment that a reasonable person would find intolerable. *Hilt-Dyson*, 282 F.3d at 463.

This means that Plaintiff can only prove her case if she showed that her workplace was truly "hellish." *Id.*

### 2. *Plaintiff's Harassment Allegations Have No Connection to Her Gender*

There exists no evidence that the treatment Plaintiff complains of (Mr. Silverman brought sweets for everyone including her; forwarded E-mails to a group of Plaintiff's male-co-workers as well as Plaintiff; asked Plaintiff to the movies, dinner, and a SigmaTron supplier party; called and texted Plaintiff) had any connection to her gender. This alone warrants the dismissal of Plaintiff's harassment claim. *See Patton v. Indianapolis Public School Bd.*, 276 F.3d 334, 339 (7th Cir. 2002) (plaintiff's failure to connect harassing conduct to her gender was "fatal to her claim" since "[a]s long as the hostility was not based on a protected characteristic, Title VII is not implicated."). Accordingly, because Plaintiff cannot establish an objectively hostile work environment, summary judgment in favor of SigmaTron is warranted on this claim.

### 3. *SigmaTron Cannot Be Held Liable for Any Alleged Harassment*

Had Plaintiff been able to establish a *prima facie* case for her hostile work environment claim (which she cannot), Plaintiff's sexual harassment claim would still fail because she cannot show that SigmaTron is liable for Mr. Silverman's alleged harassment. In order to establish employer liability, Plaintiff must show that: (1) a supervisor participated in the harassment that created the hostile work environment or (2) the employer was negligent in discovering or remedying harassment by her coworkers. *See Montgomery v. American Airlines, Inc.,* 626 F.3d 382, 390 (7th Cir. 2010).

#### a. Mr. Silverman was not Plaintiff's "Supervisor"

A supervisor is someone with the power to directly affect the terms and conditions of the plaintiff's employment. *Rhodes v. Illinois Dept. of Transp.*, 359 F.3d 498, 505 (7th Cir. 2004).

Mr. Silverman did not have the power to hire, to promote, to conduct performance reviews, to suspend, or to terminate Plaintiff: "Mr. Silverman couldn't say let's [suspend/terminate Plaintiff] and it was done." (Fact ¶ 44). In fact, Mr. Silverman never recommended that Plaintiff be terminated; Mr. Silverman did not even know, before it happened, that Plaintiff was going to be terminated. (Fact ¶ 45).

b.    <u>SigmaTron was not negligent in discovering or remedying the alleged harassment</u>

Despite the fact that Plaintiff had read and signed an acknowledgement of receipt of the SigmaTron's Policy Against Harassment, which required employees who believe they may have been harassed to immediately report same to Ms. Miedema or Ms. Kucera, Plaintiff never complained to Ms. Miedema or Ms. Kucera about any allegations of sexual harassment. (Fact ¶ 39). Plaintiff never told Ms. Miedema that she was offended by Mr. Silverman's E-mails. (Fact ¶ 40). Plaintiff never told Ms. Miedema or Mr. Fairhead that Mr. Silverman had allegedly sent Plaintiff late night text messages inviting her to go out with him. (Fact ¶ 41). Plaintiff never told Ms. Miedema that Mr. Silverman had allegedly requested an outside-of-work relationship with her (by allegedly asking Plaintiff if he could come over to her home on nights of Cubs games or when he was downtown to sleep over, or to the movies). (Fact ¶ 42). Plaintiff never told Ms. Miedema that Plaintiff had allegedly pulled on the neckline of Plaintiff's sweater revealing Plaintiff's neck. (Fact ¶ 43). Plaintiff's failure to comply with SigmaTron's Harassment Policy and failure to alert SigmaTron of her claims of harassment invalidates Plaintiff's charge and warrants the dismissal of Plaintiff's harassment claim. *Nobles*, 2004 WL 419900, at *12 (finding that hostile work environment did not exist where plaintiff forwarded only one inappropriate e-mail to the Human Resources Department and did not complain to the

Human Resources Department about most of the e-mails, documents, and comments, nor voiced his concerns to his supervisor at any time).

### D. SigmaTron Should be Awarded Summary Judgment on Plaintiff's Allegations of Retaliation

To survive a motion for summary judgment on her Title VII retaliation claim, Plaintiff must prove that SigmaTron intentionally retaliated against her based on her filing of her EEOC Charge. To establish a *prima facie* case of retaliation, Plaintiff must establish through either direct or indirect evidence "that, but for [her] protected speech, [SigmaTron] would not have [terminated her]." *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012); *Coleman v. Donahoe*, 667 F.3d 835, 859 (7th Cir. 2012) (citations omitted).

Under the direct method of proof, Plaintiff is required to evidence: (1) that she engaged in a statutorily protected activity; (2) that she suffered a materially adverse action by her employer; and (3) there was a causal link between the two. *Silverman*, 637 F.3d at 740 (7th Cir. 2011); *see also, Leitgen v. Fransciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 673 (7th Cir. 2011). It is the third element this is lacking in the evidence: a causal link between Plaintiff's complaint to the EEOC and her termination for violating SigmaTron's policy.

Having insufficient evidence to demonstrate retaliation via the direct method, Plaintiff must rely on the indirect method to support her retaliation claim; however, as with her discrimination claims, Plaintiff's retaliation claim fails under the indirect method. This is especially true since the Court is to apply the indirect, burden-shifting approach described above related to Plaintiff's discrimination claims to Plaintiff's claim of retaliation. Specifically, Plaintiff can only establish a *prima facie* case of retaliation where there is evidence that (1) Plaintiff engaged in a statutorily protective activity; (2) she met SigmaTron's legitimate expectations, which would include not allowing employees with whom she supervised to mix

solders; (3) she suffered a materially adverse action; and (4) she was treated less favorably than some similarly situated employee who did not engage in the statutorily protected activity. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (Title VII). If Plaintiff was to establish each of these elements, which she cannot in this case, then the burden would shift to SigmaTron to articulate a nondiscriminatory reason for terminating Plaintiff. *Tomanovich*, 457 F.3d at 663. Upon meeting its burden, Plaintiff would then need to show that a genuine issue of material fact existed as to whether SigmaTron's proffered reason was pretextual. *Id.* For the reasons previously addressed above, Plaintiff cannot show that she met SigmaTron's legitimate job expectations or that SigmaTron treated her less favorably than similarly situated employees who did not engage in statutorily protected activities. *Silverman*, 637 F.3d at 742. Further, as set forth above, absent from the record is any evidence that there exist any similarly situated employees who did not file an EEOC Charge that were treated more favorably than Plaintiff. Because Plaintiff fails to prove her retaliation claim under both the direct method and the indirect method, summary judgment in favor of SigmaTron is warranted on Plaintiff's retaliation claim (Count II).

## CONCLUSION

**WHEREFORE,** for the reasons set forth in SigmaTron's Motion and Memorandum in Support, Defendant SigmaTron International, Inc. respectfully requests that this Court grant summary judgment in its favor on all of Plaintiff's claims and dismiss all claims against it as requested in SigmaTron's Motion.

Dated: April 9, 2013

SIGMATRON INTERNATIONAL, INC., a corporation,


By:＿＿＿/s/ Tiffany L. Carpenter＿＿＿＿＿＿＿
One of its Attorneys

Timothy J. Riordan (ARDC No. 2343231)
Tiffany L. Carpenter (ARDC No. 6292517)
Howard & Howard Attorneys PLLC
200 S. Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone:  312-472-4000
TCarpenter@HowardandHoward.com

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on April 9, 2013, I electronically filed a true and correct copy of the foregoing document with the Clerk of this Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

By:   /s/ Tiffany L. Carpenter
One of its Attorneys

Timothy J. Riordan (ARDC No. 2343231)
Tiffany L. Carpenter (ARDC No. 6292517)
Howard & Howard Attorneys PLLC
200 S. Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: 312-472-4000
TCarpenter@HowardandHoward.com