```
 1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3

 4      MARIA N. GRACIA,                  )
                                          )
 5                       Plaintiff,       )
                                          )
 6           vs.                          )    No. 11 CV 07604
                                          )
 7      SIGMATRON INTERNATIONAL, INC.,    )    Chicago, Illinois
                                          )    December 9, 2014
 8                       Defendant.       )    1:30 o'clock p.m.

 9

10           TRANSCRIPT OF PROCEEDINGS - PRETRIAL CONFERENCE
                BEFORE THE HONORABLE EDMOND E. CHANG
11

12      APPEARANCES:

13      For the Plaintiff:      MS. KATHRYN E. KORN
                                LAW OFFICE OF KATHRYN E. KORN
14                              8501 West Higgins
                                Chicago, Illinois 60631
15                              312-399-1122
                                kathrynkorn@aol.com
16
                                MR. HALL ADAMS, III
17                              LAW OFFICE OF HALL ADAMS
                                33 North Dearborn Street
18                              Chicago, Illinois 60602
                                312-445-4900
19                              hall@adamslegal.net

20

21      For the Defendant:     MS. TIFFANY L. CARPENTER
                               MR. TIMOTHY J. RIORDAN
22                             HOWARD & HOWARD ATTORNEYS
                               200 South Michigan Avenue
23                             Chicago, Illinois 60604
                               312-427-2032
24                             tcarpenter@howardandhoward.com
                               triordan@howardandhoward.com
25
```

1    Court Reporter:          FEDERAL OFFICIAL COURT REPORTER
                              MS. KRISTA BURGESON
2                             219 South Dearborn Street
                              Chicago, Illinois 60604
3                             312-435-5567
                              krista_burgeson@ilnd.uscourts.gov
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

01:13:04    25

01:13:04　1　　　　　　　THE CLERK:  11 C 7604, Gracia versus SigmaTron.

01:38:32　2　　　　　　　THE COURT:  All right.

01:38:32　3　　　　　　　Let's get appearances.

01:38:34　4　　　　　　　MR. ADAMS:  Hall Adams for the plaintiff.

01:38:35　5　　　　　　　MS. KORN:  Kathryn Korn for the plaintiff.

01:38:38　6　　　　　　　MS. CARPENTER:  Tiffany Carpenter for SigmaTron.

01:38:41　7　　　　　　　MR. RIORDAN:  Tim Riordan for SigmaTron.

01:38:44　8　　　　　　　THE COURT:  Good afternoon.

01:38:45　9　　　　　　　Okay.  Let's try to move through briskly so you can

01:38:49　10　move through your trial preparation.

01:38:52　11　　　　　　　So the first thing I wanted to talk about was the

01:38:56　12　pre-opening statement set of instructions, and I posted that

01:39:04　13　this morning, I think it was.  The hours are running together.

01:39:09　14　It may have been late last night, but I think early this

01:39:12　15　morning.

01:39:13　16　　　　　　　So what, if any, comments do you have on that?

01:39:22　17　　　　　　　MR. ADAMS:  Judge, we have no objections to that set

01:39:26　18　of instructions.

01:39:27　19　　　　　　　MR. RIORDAN:  Your Honor, we have a couple of

01:39:29　20　comments to make.

01:39:30　21　　　　　　　THE COURT:  All right.

01:39:31　22　　　　　　　MR. RIORDAN:  On Page 2, with respect to the case

01:39:36　23　statement, second paragraph on Page 2, there is no reference

01:39:41　24　to the fact that the sexual harassment had to be severe, as

01:39:47　25　the instruction requires, and I think that should be added.

01:39:52    1    THE COURT: That is definitional, which is a job for

01:39:58    2    the instructions rather than the case statement. So it is a

01:40:02    3    hostile work environment claim, so we are not going to put

01:40:06    4    that definitional aspect in.

01:40:08    5    Okay. Next?

01:40:12    6    MR. RIORDAN: That was it, Your Honor.

01:40:13    7    THE COURT: Okay.

01:40:23    8    I do want to point out, because the plaintiff had --

01:40:30    9    or the defendant had proposed this, in the definition of

01:40:35    10    hostile abusive work environment there is -- if you turn to

01:40:38    11    Page 8 on the bottom, Page 9 of the PDF, this paragraph, the

01:40:54    12    second paragraph, came from a pattern that is tucked into a

01:41:03    13    committee comment, and I think it is fair to give. It was

01:41:09    14    proposed by the defendant, but I wanted to point out that I

01:41:17    15    removed the last sentence.

01:41:19    16    And hold on. Let me find this.

01:41:23    17    MR. RIORDAN: We did note that, Your Honor, and we

01:41:25    18    don't have any objection to it.

01:41:27    19    THE COURT: Okay. I just wanted to make sure that

01:41:30    20    you didn't miss it.

01:41:31    21    And just for the record, it would be even more

01:41:33    22    confusing to define material terms and conditions of

01:41:37    23    employment.

01:41:38    24    But I wanted to flag it because I didn't give you a

01:41:42    25    red line.

01:41:43   1         MR. RIORDAN: One other comment we do have.

01:41:45   2         You did include that limiting instruction that we had

01:41:48   3 proposed once the Court had denied our motions regarding

01:41:53   4 exclusion of all references to national origin.

01:41:57   5         THE COURT: Right.

01:41:58   6         MR. RIORDAN: And I just want to make it clear that

01:42:00   7 we are -- we propose that instruction without waiving the

01:42:04   8 argument that national origin should not be mentioned in any

01:42:08   9 way.

01:42:09  10         THE COURT: Right. Right.

01:42:10  11         That was the Plan B. And so it certainly is

01:42:12  12 preserved.

01:42:14  13         MR. RIORDAN: Okay.

01:42:15  14         THE COURT: I do want to note that I changed the

01:42:17  15 language of the limiting instructions some to fit with the

01:42:22  16 fact that the jury would have heard the case statement, you

01:42:27  17 know, pretty soon before this, and I just thought it was a

01:42:31  18 little less legalese. So that is why it appears in that

01:42:36  19 format.

01:42:42  20         MS. CARPENTER: Judge, do you intend to give that

01:42:44  21 instruction the first time that evidence is promulgated with

01:42:48  22 that information?

01:42:48  23         THE COURT: No, it will be at this time and at the

01:42:53  24 end, as I had previously said.

01:42:55  25         Now, with regard to the trial and jury instructions,

01:42:59  1  I just have a couple comments, and then I will try to pose

01:43:02  2  something soon.  Not comments.  They are questions.

01:43:18  3       Plaintiff's Number 4.  Plaintiff's proposed

01:43:20  4  instruction Number 4.  I will remind you that it was a

01:43:24  5  definition of proximate cause, and it is from the Illinois

01:43:29  6  Pattern Instruction.

01:43:31  7       Now, I don't -- and, of course, the defense has

01:43:35  8  objected to this, and I don't see a need for proximate cause

01:43:40  9  definition for damages, all right, because there is a pattern

01:43:45  10  instruction in the Seventh Circuit for compensatory damages

01:43:48  11  for employment discrimination cases, and it doesn't inject

01:43:52  12  this idea of proximate cause, and I think that is right to not

01:43:57  13  inject that issue.

01:44:00  14       Were you proposing this Illinois Pattern Instruction

01:44:05  15  for something to do with liability?

01:44:17  16       MR. ADAMS:  Judge, with respect to the retaliation

01:44:23  17  claim; that is, the protected conduct was a cause, a proximate

01:44:42  18  cause, of the termination, and we were concerned that the

01:44:48  19  pattern instruction wasn't clear on the causation element of

01:44:57  20  the retaliation claim.

01:45:01  21       THE COURT:  All right.

01:45:02  22       My take on that is this:  Your very next instruction

01:45:08  23  is a proposal on mixed motive, all right, and although this

01:45:19  24  instruction, the way you phrase it, is connecting it to

01:45:25  25  harassment, under the statute, and the defense can speak to

01:45:30　　1　this, although I didn't see an objection based on this, the

01:45:33　　2　statute, it is 2000 E-2, Subparagraph M, says that if there is

01:45:41　　3　a mixed motive for an unlawful employment practice then there

01:45:44　　4　is still liability, but it defines or refers to unlawful

01:45:53　　5　employment practice, which includes both harassment and

01:45:56　　6　retaliation, retaliation is 2000 E-3.

01:46:03　　7　　　　　So it seems like the mixed motive instruction, and I

01:46:08　　8　thought there was a pattern on this, too, is applicable to

01:46:16　　9　both claims.

01:46:20　10　　　　　So if the plaintiff had the mixed motive instruction,

01:46:24　11　shouldn't that take care of, I think, what you are trying to

01:46:28　12　propose?

01:46:31　13　　　　　MR. ADAMS:  Judge, I don't disagree with that.

01:46:36　14　　　　　THE COURT:  Okay.

01:46:37　15　　　　　What is the defense position?  There might not be a

01:46:41　16　mixed motive pattern.

01:46:44　17　　　　　MR. RIORDAN:  I was going to say, Your Honor, that if

01:46:47　18　it was intended to tell the jury if there were two motives, if

01:46:53　19　at least one is discriminatory, that is not the standard.  In

01:46:57　20　a case like this it is a "but for" standard.

01:47:06　21　　　　　THE COURT:  I don't think that that is -- your

01:47:09　22　objection was not based on that, the written objection.  You

01:47:16　23　can research this if you like, and certainly it may be that

01:47:22　24　the proposal that the plaintiff has laid out should be further

01:47:27　25　explained, but 42 USC 2000 E-2, Subparagraph M, says, Except

01:47:41 1 as otherwise provided in this subchapter, an unlawful

01:47:46 2 employment practice is established when the complaining party

01:47:50 3 demonstrates that, and then it has all the protected

01:47:54 4 categories, was a motivating factor for any employment

01:47:57 5 practice, even though other factors also motivated the

01:48:01 6 practice.

01:48:02 7 And then the definition of unlawful employment

01:48:07 8 practice, it certainly includes harassment, and it also

01:48:10 9 includes retaliation, but maybe the cases saying mixed motive

01:48:17 10 does not refer to retaliation, but that is certainly not the

01:48:21 11 parenthetical's description of what you have in the written

01:48:25 12 objection.

01:48:26 13 So here is what we will do, rather than try to hash

01:48:29 14 this out: You can go ahead and try to research that question.

01:48:34 15 It certainly applies to the hostile work environment,

01:48:38 16 harassment, and it is, I suppose, an open question as to

01:48:42 17 whether it applies to retaliation.

01:48:44 18 So you should both look at that and research the

01:48:49 19 issue, and then we can -- you know, we will have to figure out

01:48:58 20 either at the start of the trial or during trial how this

01:49:01 21 instruction is going to look, but, again, it is definitively

01:49:09 22 mixed motive is -- this does -- that does apply to the

01:49:12 23 harassment, and I think the only open question then is

01:49:14 24 retaliation.

01:49:28 25 Then the next question I have is on Plaintiff's

01:49:31  1   Instruction Number 6.

01:49:35  2          MS. CARPENTER:  Judge, sorry.

01:49:36  3          Before we move to Number 6, you alluded to this at

01:49:40  4   the beginning, but Plaintiff's Number 5 appears to be related

01:49:43  5   to the sexual harassment claim, not the retaliation claim.

01:49:49  6          THE COURT:  But what I am saying is if you look at

01:49:51  7   the statute it says, unlawful employment practice, if they

01:49:55  8   were trying to get across the idea with their proximate cause

01:49:59  9   instruction, which I don't think adequately gets across the

01:50:02 10   idea, but if there was more than one cause, then the question

01:50:08 11   that I had put to both sides at this point is whether or not

01:50:13 12   the mixed motive principle that is expressed in this

01:50:21 13   Subparagraph M also applies to retaliation.

01:50:24 14          Now, Plaintiff's Instruction Number 6.

01:50:33 15          So, I guess, try to explain the thinking here on the

01:50:42 16   retaliation.

01:50:43 17          What were you saying with this one?

01:50:46 18          MS. KORN:  We are saying that one possibility is that

01:50:50 19   Mr. Silverman was not the decision maker, was the person with

01:50:59 20   the largest retaliatory motive.  He was a conduit to

01:51:05 21   Mr. Fairhead, who was the decision maker.

01:51:07 22          THE COURT:  So this is the cat's paw --

01:51:11 23          MS. KORN:  Cat's paw, yes.

01:51:13 24          MR. RIORDAN:  Your Honor, at a minimum I think you

01:51:16 25   would have to withhold determination on this one.  I don't

01:51:19  1   think there is going to be any evidence whatsoever regarding

01:51:22  2   Mr. Silverman suggesting to Mr. Fairhead that she be

01:51:27  3   terminated, and the factual basis for cat's paw would not

01:51:34  4   apply.

01:51:35  5           THE COURT:  I will reserve its applicability.

01:51:39  6           What you should both do, really the defense should

01:51:42  7   do, is if you don't like the wording of this, in case I decide

01:51:45  8   that factually it applies, is to have some kind of backup, and

01:51:50  9   I will look into this, too, because it certainly doesn't

01:51:52  10  reflect the language in the Supreme Court's decision on cat's

01:51:57  11  paw, which does use the proximate cause terminology.

01:52:04  12          But something like conduit, I don't know if that is

01:52:07  13  going to be the right wording.  So yes, I will reserve, based

01:52:12  14  on what evidence is presented, but start looking at it now so

01:52:16  15  that you have the language ready, and I will do the same.

01:52:40  16          That is it for the questions that I had.

01:52:54  17          There was also the summary chart updated, and there

01:53:03  18  was a question, I think, that the defense posed, which was

01:53:12  19  whether -- what formally was in Category 5 could be included

01:53:19  20  in the volume category for Category 6, right?

01:53:23  21          MS. CARPENTER:  Yes, Judge.

01:53:25  22          THE COURT:  And just to confirm, again, all these

01:53:29  23  e-mails are from Silverman?

01:53:31  24          MS. CARPENTER:  Yes, Judge.

01:53:32  25          And, sorry, if I could just add, we had gone through

01:53:36    1    all the categories, so Category 2(a), 2(b), and withdrawn
01:53:43    2    basically all of category 2(b) and all of category 2(a) but
01:53:49    3    for one of them.  So that is what we included in our disk.
01:53:54    4         And what we were going to ask Your Honor is if we
01:53:57    5    could just include them in the summary chart in 6.
01:54:10    6         THE COURT:  Okay.
01:54:10    7         So basically they show up as numbers, not just a line
01:54:20    8    entry?
01:54:21    9         MR. RIORDAN:  The volume of them.
01:54:23   10         THE COURT:  Do you have any objection to that?
01:54:25   11         MS. KORN:  We continue to have an objection about the
01:54:29   12    volume number being unreliable.
01:54:31   13         THE COURT:  Right.
01:54:32   14         MS. KORN:  And I note at the last -- I re-read what
01:54:35   15    we discussed at the last session of the pretrial conference,
01:54:38   16    and I failed to mention that one of our unreliability -- two
01:54:42   17    of our unreliability prongs are that SigmaTron has no document
01:54:46   18    retention policy, and they affirmatively have an electronic
01:54:50   19    communications policy which tells employees, don't save your
01:54:54   20    e-mails.
01:54:55   21         So, again --
01:54:58   22         THE COURT:  But this volume question, though, that
01:55:01   23    could only have hurt the defendant, right, because if they
01:55:07   24    have more -- just on this volume issue, like what they are
01:55:10   25    trying to show is that Silverman sent many, many e-mails to

01:55:15  1   the plaintiff and that, you know, the harassing ones were a

01:55:24  2   smaller subset.

01:55:26  3        So that issue about not finding more e-mails is not,

01:55:30  4   I don't think, a response to the volume argument.

01:55:34  5        So you can go ahead and push 2(a), and I think

01:55:40  6   Category 4, as well, has already been pushed in, or did you

01:55:44  7   completely take out --

01:55:45  8        MS. CARPENTER:  We left Category 4 in because

01:55:48  9   Your Honor, I think, said depending on what happens during

01:55:51  10   trial, it could or could not come in.  And so we included it

01:55:55  11   in there.  But I am happy to put it wherever you want me to

01:55:59  12   put it.

01:56:00  13        THE COURT:  Did you already move it into Category 6?

01:56:03  14        MS. CARPENTER:  No.

01:56:10  15        THE COURT:  All right.

01:56:11  16        So since Category 6 is a volume issue, I have no

01:56:16  17   problem with moving -- there are many, but the Category 4

01:56:19  18   e-mails into the volume one, as well; and if she opens the

01:56:25  19   door somehow to this general rule enforcement issue, then it

01:56:29  20   will be its own category as well.

01:56:34  21        MS. CARPENTER:  Thank you.

01:56:35  22        THE COURT:  So you can push everything into the

01:56:37  23   volume category.

01:56:46  24        So those are the only questions I had.

01:56:55  25        What else do you want to raise for the plaintiff?

01:56:57    1      MR. ADAMS: Judge, can you give us an amount of time

01:57:00    2   that you expect jury selection to take with respect to our

01:57:04    3   then lining up witnesses for Monday?

01:57:06    4      THE COURT: My goal is to finish jury selection

01:57:09    5   either right before lunch or right after it. So you should

01:57:17    6   prepare to open at like 1:00 o'clock.

01:57:23    7      MR. ADAMS: And for purposes of examining witnesses,

01:57:26    8   I know that your standing order says to do it all from the

01:57:30    9   lectern at the microphone. Can we monkey with the position

01:57:35   10   of the lectern so that we can see the witness and see the

01:57:39   11   jury?

01:57:40   12      THE COURT: Yes. You can carefully move it into a

01:57:42   13   position where it is facing the witness.

01:57:45   14      MR. ADAMS: And is that also a procedure you ask us

01:57:51   15   to follow for opening statement and closing argument?

01:57:55   16      THE COURT: Yes. I will tell you the reason.

01:57:58   17      When I was a trial lawyer, I loved the freedom of

01:58:01   18   moving around the courtroom. The problem is with our

01:58:04   19   technology, the microphones are what is recording your voice,

01:58:09   20   so even if I can hear you, if you are not near a microphone it

01:58:13   21   is actually not being recorded. So if there is ever an issue

01:58:16   22   with the transcript and you have to go back to the recording,

01:58:19   23   we won't have it.

01:58:20   24      So you have got to be at the lectern.

01:58:25   25      MR. RIORDAN: But in openings you could turn it

01:58:27  1    toward the jury?

01:58:29  2          THE COURT:  Yes.  That is what I expect you to do for

01:58:32  3    openings.

01:58:39  4          We do have some lavalieres and things like that, but

01:58:42  5    they have never worked well.

01:58:44  6          Other questions from the defense now?

01:58:46  7          MS. CARPENTER:  Yes, Judge.

01:58:48  8          Regarding the exhibits, it was our understanding that

01:58:51  9    the disk that was going to Ms. Brooks was the disk that then

01:58:55  10   would be given to the jury, and so we took a look at

01:58:59  11   plaintiff's disk that she provided to Ms. Brooks, and it

01:59:03  12   included six of the exhibits that you had already ruled as

01:59:08  13   inadmissible.

01:59:09  14         So we then asked plaintiff to provide a new disk

01:59:13  15   without those, specifically Exhibit 1, which is the Homeland

01:59:18  16   Security; Exhibit 7, the one pasted on; Exhibit 8, the

01:59:29  17   Mariachi; Exhibit 9 is the map, and those have to do with her

01:59:34  18   national origin claim.

01:59:35  19         And then there were two exhibits, 13, which is the

01:59:38  20   annual report, and Exhibit 18, which is Mr. Fairhead's

01:59:41  21   affidavit, and those had to do with claims that you

01:59:44  22   determined, for various reasons, those exhibits all couldn't

01:59:49  23   come in.

01:59:52  24         THE COURT:  Thank you for flagging it.

01:59:55  25         The system requires us to affirmatively click the

02:00:00  1    ones that will go back to the -- be displayable to the jury,

02:00:05  2    and so it is okay if there are too many on there.  I will just

02:00:10  3    -- we will be -- we have to release exhibits to the jury, so

02:00:18  4    we just won't release those.  Okay?

02:00:21  5         If for some reason the door gets open on something,

02:00:25  6    then it is actually a little easier to have it there, but do

02:00:30  7    not be concerned that the jury is actually going to get that

02:00:34  8    disk.  What they get is -- they will get a list of the

02:00:41  9    exhibits released to them, and we will only release those

02:00:45  10   admitted into evidence.

02:00:46  11        And so, indeed, almost always the -- what we get from

02:00:50  12   the parties, even if we have gone through in great detail what

02:00:54  13   should come in and what can't come in, is almost always a

02:00:58  14   subset, because very often during the trial you will just

02:01:02  15   jettison -- you know, even though it is allowed, you will say,

02:01:05  16   Oh, forget it, I am not going to put that in, and then we

02:01:08  17   won't release it to the jury.

02:01:09  18        So just as we do with paper, at the very end of the

02:01:13  19   trial, instead of crowding around a table and going through

02:01:16  20   the paper exhibits, you will be at the computer with

02:01:21  21   Ms. Brooks making sure that the ones that are being clicked

02:01:24  22   for release are the ones admitted into evidence.

02:01:27  23        MS. CARPENTER:  So I guess we will then have to

02:01:29  24   provide a new disk anyway for Category 6 to be correct, and I

02:01:34  25   didn't include everything that you found to be inadmissible on

02:01:37   1   our disk.

02:01:38   2           So if it is okay, we will --

02:01:40   3           THE COURT:  You can -- you don't have to, but if it

02:01:43   4   is something that you think maybe will open the door, you can

02:01:48   5   throw it on there if you like.  I just wouldn't include, you

02:01:52   6   know, swaths of exhibits that have not been admitted, because

02:01:55   7   it is not likely they will be admitted.  But if you can think

02:01:58   8   of a few categories where you think that maybe they will open

02:02:02   9   the door, I have no problem with you putting it on there.  It

02:02:05  10   is no skin off our nose.

02:02:13  11           What I just don't want to do is if you double the

02:02:16  12   number of exhibits, for example, going through the list having

02:02:16  13   to do that, that would be a chore.

02:02:17  14           MR. RIORDAN:  Just to clarify one thing, Your Honor?

02:02:19  15           When this issue came up, I believe they rationalized

02:02:23  16   putting them on on the basis of if they didn't do something it

02:02:27  17   might have been considered that they waived the opportunity.

02:02:30  18   I just want to make sure if we decide not to put them on, we

02:02:33  19   will not be subject to that.

02:02:34  20           THE COURT:  No.  I mean, it is technically not even

02:02:41  21   part of the record, the disk.  So don't worry about that at

02:02:45  22   all.

02:02:45  23           We are testing it.  There may be an issue, I think,

02:02:49  24   with some of the naming conventions, how it is uploading, but

02:02:53  25   I will let you know immediately.  I have a 2:30 status.  After

02:02:57   1   that I will sit down with Ms. Brooks and we will sit down and
02:03:01   2   figure out what uploaded appropriately and what did not.
02:03:04   3          So hold off actually before you update your chart,
02:03:08   4   because I may have to ask you to do something with some of the
02:03:12   5   file exhibit names.
02:03:16   6          MS. CARPENTER:  And, Judge, we wanted to confirm the
02:03:19   7   pleading and interrogatory answers and discovery responses.
02:03:23   8   Those aren't on the disk, but we may want to use them for
02:03:26   9   impeachment or something like that.
02:03:28   10          So we didn't want to be foreclosed from doing so
02:03:32   11   simply because it is not an exhibit or not on that list.
02:03:35   12          Do you want to us put it on if we think we may use
02:03:38   13   it?
02:03:39   14          THE COURT:  Yes, you might as well.
02:03:44   15          Actually, since you -- since we are going to need
02:03:58   16   deposition transcripts if you are going to impeach, you can
02:04:04   17   throw them on there instead.  Just make it some exhibit number
02:04:15   18   way high and start a new series of deposition transcripts, and
02:04:20   19   other discovery.
02:04:23   20          MS. CARPENTER:  And, Judge, you had ruled on the
02:04:26   21   demonstrative exhibits, whether we could use them for opening
02:04:29   22   or closing, but it is our understanding, and we want to be
02:04:33   23   sure it is correct, we can use the other exhibits that have
02:04:36   24   been determined to be admissible during trial during our
02:04:38   25   opening and closing?

02:04:40  1          THE COURT:  Yes.

02:04:41  2          MS. CARPENTER:  Okay.

02:04:41  3          Then we just had a couple questions about witnesses,

02:04:44  4  Judge.

02:04:45  5          The plaintiff has been kind enough to give us their

02:04:48  6  anticipated list in order, and their first witness, actually

02:04:53  7  their first three witnesses, are all our current employees,

02:04:58  8  Mr. Silverman, Ms. Miedema, and Mr. Fairhead, and it is our

02:05:04  9  understanding that we are supposed to put on our direct

02:05:07  10  examination of these witnesses immediately following the

02:05:11  11  plaintiff's cross-examination.

02:05:15  12          The plaintiff, herself, is at the end of the list of

02:05:19  13  witnesses for the plaintiff's case, and our concern is that if

02:05:25  14  we need to rebut any information that she brings out for the

02:05:28  15  first time that our witnesses didn't have a chance to discuss

02:05:32  16  originally, we would like an opportunity to bring them in to

02:05:36  17  rebut only that limited amount of information.

02:05:39  18          Will we have an opportunity to do that?

02:05:42  19          THE COURT:  Yes.  That is par for the course, because

02:05:44  20  I require the directs to be done in the plaintiff's case.

02:05:47  21  That is not a problem.

02:05:48  22          MR. RIORDAN:  And just to clarify, Your Honor, we

02:05:50  23  can't quite anticipate the things they are going to emphasize,

02:05:54  24  put in or not put in.

02:05:56  25          Do we have an obligation in any way to anticipate

02:05:59   1    what she is going to say?

02:06:02   2        THE COURT:  You do have -- it is an exaggeration to

02:06:06   3    say you have no way of knowing what she is going to testify

02:06:10   4    to.

02:06:11   5        MR. RIORDAN:  I didn't mean in total respect, but

02:06:13   6    there have been changes as the case has progressed, positions

02:06:18   7    they take, let's put it that way, and to some extent it is

02:06:22   8    kind of unfair for us to have to anticipate what they are

02:06:25   9    going to emphasize or not emphasize in putting on our direct

02:06:29  10    defense.

02:06:29  11        THE COURT:  Right.  But you know what the accusations

02:06:35  12    are, and there may be, you know, at the fringes some

02:06:44  13    differences that might surprise you, and then you go ahead and

02:06:48  14    you can call them again for rebuttal, but --

02:06:53  15        Here is another thing:  You will have heard their

02:06:57  16    cross-examination, okay, and so you will know what you need to

02:07:00  17    get out.

02:07:03  18        There has never been a problem in the 25 trials that

02:07:06  19    I have conducted in which I have had this requirement where

02:07:13  20    the defense thought, now we are really in a trick bag.  It

02:07:18  21    just has never happened that we have had a problem with this,

02:07:24  22    and it is very rare, actually, that the defense has even asked

02:07:28  23    for rebuttal, because everything did come in as they expected

02:07:32  24    in the plaintiff's case and in the direct.

02:07:38  25        MR. RIORDAN:  Well, the only other comment I have is

02:07:42 1    my experience, limited with this particular issue, most

02:07:46 2    instances it is the defense saying, can we do so, so we don't

02:07:49 3    have to bring them back, and in that case, the Court can

02:07:55 4    exercise its discretion.

02:07:56 5        Secondly, for the record, we would ask that the

02:07:59 6    plaintiff be put on first so that we know.  We are putting on

02:08:05 7    our defense basically without knowing what the plaintiff is

02:08:07 8    going to say.

02:08:08 9        THE COURT:  As I said, it is not going to be a

02:08:13 10   surprise to -- it is not going to be a surprise, I think, what

02:08:20 11   the plaintiff is going to say; and if there is a surprise, and

02:08:24 12   it doesn't even have to raise to the level of surprise, I am

02:08:27 13   not trying to say some difficult standard, and you need to

02:08:31 14   call your witnesses for rebuttal, then you can do that.

02:08:34 15       You will also have undergone cross-examination.  So

02:08:37 16   it would be quite silly to not rebut something that was

02:08:45 17   brought up in cross-examination, right, in the direct.  That

02:08:48 18   would be -- that would be bizarre.

02:08:52 19       You also know that she is going to claim that the

02:08:59 20   harassment reporting mechanism broke down, and you have her

02:09:04 21   version of why she thinks that broke down, and so you ought to

02:09:08 22   be covering that topic, too.

02:09:10 23       So that is how we will proceed.

02:09:15 24       MR. RIORDAN:  All right.

02:09:16 25       MR. ADAMS:  Judge, apropos of that, Judge, after the

02:09:20 1 -- so as part of this protocol, I obviously don't raise

02:09:25 2 conventional scope objections?

02:09:28 3          THE COURT:  Right.

02:09:29 4          MR. ADAMS:  If a new topic comes up on the -- on the

02:09:34 5 friendly examination of adverse witnesses that I have called,

02:09:40 6 I will get an opportunity to cross on those new topics?

02:09:45 7          THE COURT:  Yes.  That is recross.

02:09:48 8          MR. ADAMS:  Right, okay.

02:09:51 9          THE COURT:  So have you definitively decided not to

02:09:55 10 call certain witnesses?  Or let me put it the other way.  Who

02:09:59 11 are you calling?  What is your order?

02:10:01 12          MR. ADAMS:  Judge, I am doing this from memory, but

02:10:03 13 there aren't that many.

02:10:05 14          Mr. Silverman, Ms. Miedema, Gregory Fairhead,

02:10:15 15 Mr. Niemi, the plaintiff, the plaintiff's sister, Mr. Murphy,

02:10:30 16 and Mr. Trujillo.

02:10:42 17          Did I get it right?

02:10:43 18          MR. RIORDAN:  I think so.

02:10:45 19          THE COURT:  Okay.

02:11:00 20          And then from the defense, who are you anticipating

02:11:04 21 at least now calling who is not among those eight?

02:11:08 22          MS. CARPENTER:  That would be Ms. Gracia, her mother.

02:11:12 23 She has the same name, different middle initial, Maria E.

02:11:17 24 Gracia, Mr. Tony Truppa, and Imran Haq, Judge.

02:11:29 25          THE COURT:  You served a subpoena on Mr. Haq?

02:11:32   1          MS. CARPENTER:  Yes.

02:11:33   2          MR. RIORDAN:  Yes.

02:11:46   3          THE COURT:  Anything else?

02:11:50   4          MS. KORN:  The one other thing is you had asked the

02:11:52   5   defendant to identify deposition testimony about the

02:11:57   6   Sweetest Day card, and what they provided is about pastries.

02:12:02   7   It is not about the card.

02:12:06   8          I don't think there was anything in the deposition.

02:12:09   9          THE COURT:  It doesn't appear to have been asked

02:12:12   10  about.

02:12:12   11         You can put the month and year.

02:12:14   12         MR. ADAMS:  Thank you.

02:12:14   13         THE COURT:  So let's gather 8:30 on Monday morning,

02:12:20   14  and that way we will be ready to go as soon as the jurors

02:12:25   15  trickle in.

02:12:27   16         Thank you.

02:12:30   17         MS. CARPENTER:  Thank you, Judge.

02:12:31   18         MR. ADAMS:  Thank you.

02:12:32   19         MS. KORN:  Thank you, Judge.

02:12:33   20         MR. RIORDAN:  And I will have a tie on that day.  I

02:12:33   21  didn't expect to be here.

02:12:36   22         THE COURT:  That is fine.

02:12:37   23         Thank you.

           24         (Proceedings concluded.)

           25

1               **C E R T I F I C A T E**

2

3

4          I certify that the foregoing is a correct transcript

5  from the record of proceedings in the above-entitled matter.

6

7  /s/Krista Burgeson, CSR, RMR, CRR    January 2, 2015
     Federal Official Court Reporter     Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| / | | |
|---|---|---|
| **/s/Krista** [1] - 255:7 | | |

**60631** [1] - 233:14

**APPEARANCES** [1] - 233:12
**applicability** [1] - 242:5
**applicable** [1] - 239:8
**applies** [4] - 240:15, 240:17, 241:13, 242:8
**apply** [2] - 240:22, 242:4
**appropriately** [1] - 249:2
**apropos** [1] - 252:25
**argument** [3] - 237:8, 244:4, 245:15
**aspect** [1] - 236:4
**ATTORNEYS** [1] - 233:22
**Avenue** [1] - 233:22

---

**0**

**07604** [1] - 233:6

**7**

**7** [1] - 246:16
**7604** [1] - 235:1

---

**1**

**1** [1] - 246:15
**11** [2] - 233:6, 235:1
**13** [1] - 246:19
**18** [1] - 246:20
**1:00** [1] - 245:6
**1:30** [1] - 233:8

**8**

**8** [2] - 236:11, 246:16
**8501** [1] - 233:14
**8:30** [1] - 254:13

**9**

**9** [3] - 233:7, 236:11, 246:17

**B**

**backup** [1] - 242:8
**bag** [1] - 251:20
**based** [3] - 239:1, 239:22, 242:13
**basis** [2] - 242:3, 248:16
**BEFORE** [1] - 233:10
**beginning** [1] - 241:4
**bizarre** [1] - 252:18
**bottom** [1] - 236:11
**bring** [2] - 250:16, 252:3
**brings** [1] - 250:14
**briskly** [1] - 235:9
**broke** [2] - 252:20, 252:21
**brooks** [4] - 246:9, 246:11, 247:21, 249:1
**brought** [1] - 252:17
**Burgeson** [1] - 255:7
**BURGESON** [1] - 234:1

---

**2**

**2** [3] - 235:22, 235:23, 255:7
**2(a** [3] - 243:1, 243:2, 244:5
**2(b** [2] - 243:1, 243:2
**200** [1] - 233:22
**2000** [3] - 239:2, 239:6, 239:25
**2014** [1] - 233:7
**2015** [1] - 255:7
**219** [1] - 234:2
**25** [1] - 251:18
**2:30** [1] - 248:25

**A**

**above-entitled** [1] - 255:5
**abusive** [1] - 236:10
**accusations** [1] - 251:11
**ADAMS** [15] - 233:16, 233:17, 235:4, 235:17, 238:16, 239:13, 245:1, 245:7, 245:14, 252:25, 253:4, 253:8, 253:12, 254:12, 254:18
**Adams** [1] - 235:4
**add** [1] - 242:25
**added** [1] - 235:25
**adequately** [1] - 241:9
**admissible** [1] - 249:24
**admitted** [4] - 247:10, 247:22, 248:6, 248:7
**adverse** [1] - 253:5
**affidavit** [1] - 246:21
**affirmatively** [2] - 243:18, 246:25
**afternoon** [1] - 235:8
**ahead** [3] - 240:14, 244:5, 251:13
**allowed** [1] - 247:15
**alluded** [1] - 241:3
**almost** [2] - 247:11, 247:13
**amount** [2] - 245:1, 250:17
**annual** [1] - 246:20
**answers** [1] - 249:7
**anticipate** [3] - 250:23, 250:25, 251:8
**anticipated** [1] - 250:6
**anticipating** [1] - 253:20
**anyway** [1] - 247:24
**appear** [1] - 254:9
**appearances** [1] - 235:3

**C**

**card** [2] - 254:6, 254:7
**care** [1] - 239:11
**carefully** [1] - 245:12
**carpenter** [1] - 235:6
**CARPENTER** [17] - 233:21, 235:6, 237:20, 241:2, 242:21, 242:24, 244:8, 244:14, 244:21, 246:7, 247:23, 249:6, 249:20, 250:2, 253:22, 254:1, 254:17
**case** [10] - 235:22, 236:2, 237:16, 239:20, 242:7, 250:13, 250:20, 251:6, 251:24, 252:3
**cases** [2] - 238:11, 240:9
**cat's** [4] - 241:22, 241:23,

---

**3**

**312-399-1122** [1] - 233:15
**312-427-2032** [1] - 233:23
**312-435-5567** [1] - 234:3
**312-445-4900** [1] - 233:18
**33** [1] - 233:17

---

**4**

**4** [5] - 238:3, 238:4, 244:6, 244:8, 244:17
**42** [1] - 239:25

---

**5**

**5** [2] - 241:4, 242:19

---

**6**

**6** [8] - 241:1, 241:3, 241:14, 242:20, 243:5, 244:13, 244:16, 247:24
**60602** [1] - 233:18
**60604** [2] - 233:23, 234:2

242:3, 242:10
**categories** [3] - 240:4, 243:1, 248:8
**Category** [9] - 242:19, 242:20, 243:1, 244:6, 244:8, 244:13, 244:16, 244:17, 247:24
**category** [5] - 242:20, 243:2, 244:20, 244:23
**causation** [1] - 238:19
**certain** [1] - 253:10
**certainly** [6] - 237:11, 239:23, 240:8, 240:10, 240:15, 242:9
**certify** [1] - 255:4
**chance** [1] - 250:15
**CHANG** [1] - 233:10
**changed** [1] - 237:14
**changes** [1] - 251:6
**chart** [3] - 242:17, 243:5, 249:3
**Chicago** [5] - 233:7, 233:14, 233:18, 233:23, 234:2
**chore** [1] - 248:13
**Circuit** [1] - 238:10
**claim** [7] - 236:3, 238:17, 238:20, 241:5, 246:18, 252:19
**claims** [2] - 239:9, 246:21
**clarify** [2] - 248:14, 250:22
**clear** [2] - 237:6, 238:19
**CLERK** [1] - 235:1
**click** [1] - 246:25
**clicked** [1] - 247:21
**closing** [3] - 245:15, 249:22, 249:25
**comment** [3] - 236:13, 237:1, 251:25
**comments** [4] - 235:16, 235:20, 238:1, 238:2
**committee** [1] - 236:13
**communications** [1] - 243:19
**compensatory** [1] - 238:10
**complaining** [1] - 240:2
**completely** [1] - 244:7
**computer** [1] - 247:20
**concern** [1] - 250:13
**concerned** [2] - 238:18, 247:7
**concluded** [1] - 254:24
**conditions** [1] - 236:22
**conduct** [1] - 238:17
**conducted** [1] - 251:19
**conduit** [2] - 241:20, 242:12
**CONFERENCE** [1] - 233:10

**conference** [1] - 243:15
**confirm** [2] - 242:22, 249:6
**confusing** [1] - 236:22
**connecting** [1] - 238:24
**considered** [1] - 248:17
**continue** [1] - 243:11
**conventional** [1] - 253:2
**conventions** [1] - 248:24
**correct** [3] - 247:24, 249:23, 255:4
**couple** [3] - 235:19, 238:1, 250:3
**course** [2] - 238:7, 250:19
**Court** [3] - 234:1, 252:3, 255:7
**COURT** [48] - 233:1, 234:1, 235:2, 235:8, 235:21, 236:1, 236:7, 236:19, 237:5, 237:10, 237:14, 237:23, 238:21, 239:14, 239:21, 241:6, 241:22, 242:5, 242:22, 243:6, 243:10, 243:13, 243:22, 244:13, 244:15, 244:22, 245:4, 245:12, 245:16, 246:2, 246:24, 248:3, 248:20, 249:14, 250:1, 250:19, 251:2, 251:11, 252:9, 253:3, 253:7, 253:9, 253:19, 253:25, 254:3, 254:9, 254:13, 254:22
**court** [1] - 237:3
**Court's** [1] - 242:10
**courtroom** [1] - 245:18
**covering** [1] - 252:22
**cross** [5] - 250:11, 251:16, 252:15, 252:17, 253:6
**cross-examination** [4] - 250:11, 251:16, 252:15, 252:17
**crowding** [1] - 247:19
**CRR** [1] - 255:7
**CSR** [1] - 255:7
**current** [1] - 250:7
**CV** [1] - 233:6

## D

**damages** [2] - 238:9, 238:10
**Date** [1] - 255:7
**Dearborn** [2] - 233:17, 234:2
**December** [1] - 233:7
**decide** [2] - 242:7, 248:18

**decided** [1] - 253:9
**decision** [3] - 241:19, 241:21, 242:10
**defendant** [4] - 236:9, 236:14, 243:23, 254:5
**Defendant** [2] - 233:8, 233:21
**defense** [12] - 238:7, 238:25, 239:15, 242:6, 242:18, 246:6, 251:10, 251:20, 251:22, 252:2, 252:7, 253:20
**define** [1] - 236:22
**defines** [1] - 239:4
**definition** [4] - 236:9, 238:5, 238:9, 240:7
**definitional** [2] - 236:1, 236:4
**definitively** [2] - 240:21, 253:9
**demonstrates** [1] - 240:3
**demonstrative** [1] - 249:21
**denied** [1] - 237:3
**deposition** [4] - 249:16, 249:18, 254:5, 254:8
**description** [1] - 240:11
**detail** [1] - 247:12
**determination** [1] - 241:25
**determined** [2] - 246:22, 249:24
**differences** [1] - 251:13
**different** [1] - 253:23
**difficult** [1] - 252:13
**direct** [4] - 250:9, 251:9, 251:24, 252:17
**directs** [1] - 250:20
**disagree** [1] - 239:13
**discovery** [2] - 249:7, 249:19
**discretion** [1] - 252:4
**discrimination** [1] - 238:11
**discriminatory** [1] - 239:19
**discuss** [1] - 250:15
**discussed** [1] - 243:15
**disk** [10] - 243:3, 246:9, 246:11, 246:14, 247:8, 247:24, 248:1, 248:21, 249:8
**displayable** [1] - 247:1
**DISTRICT** [2] - 233:1, 233:1
**DIVISION** [1] - 233:2
**document** [1] - 243:17
**done** [1] - 250:20
**door** [4] - 244:19, 247:5, 248:4, 248:9
**double** [1] - 248:11

**down** [4] - 249:1, 252:20, 252:21
**during** [5] - 240:20, 244:9, 247:14, 249:24

## E

**E-2** [2] - 239:2, 239:25
**E-3** [1] - 239:6
**e-mails** [5] - 242:23, 243:20, 243:25, 244:3, 244:18
**early** [1] - 235:14
**easier** [1] - 247:6
**EASTERN** [1] - 233:2
**EDMOND** [1] - 233:10
**eight** [1] - 253:21
**either** [2] - 240:20, 245:5
**electronic** [1] - 243:18
**element** [1] - 238:19
**emphasize** [3] - 250:23, 251:9
**employees** [2] - 243:19, 250:7
**employment** [8] - 236:23, 238:11, 239:3, 239:5, 240:2, 240:4, 240:7, 241:7
**end** [3] - 237:24, 247:18, 250:12
**enforcement** [1] - 244:19
**entitled** [1] - 255:5
**entry** [1] - 243:8
**environment** [3] - 236:3, 236:10, 240:15
**established** [1] - 240:2
**evidence** [5] - 237:21, 242:1, 242:14, 247:10, 247:22
**exaggeration** [1] - 251:2
**examination** [6] - 250:10, 250:11, 251:16, 252:15, 252:17, 253:5
**examining** [1] - 245:7
**example** [1] - 248:12
**except** [1] - 239:25
**exclusion** [1] - 237:4
**exercise** [1] - 252:4
**Exhibit** [5] - 246:15, 246:16, 246:17, 246:20
**exhibit** [3] - 249:5, 249:11, 249:17
**exhibits** [11] - 246:8, 246:12, 246:19, 246:22, 247:3, 247:9, 247:20, 248:6, 248:12, 249:21, 249:23
**expect** [3] - 245:2, 246:2, 254:21

**expected** [1] - 251:23
**experience** [1] - 252:1
**explain** [1] - 241:15
**explained** [1] - 239:25
**expressed** [1] - 241:12
**extent** [1] - 251:7

## F

**facing** [1] - 245:13
**fact** [2] - 235:24, 237:16
**factor** [1] - 240:4
**factors** [1] - 240:5
**factual** [1] - 242:3
**factually** [1] - 242:8
**failed** [1] - 243:16
**fair** [1] - 236:13
**Fairhead** [4] - 241:21, 242:2, 250:8, 253:14
**Fairhead's** [1] - 246:20
**FEDERAL** [1] - 234:1
**Federal** [1] - 255:7
**few** [1] - 248:8
**figure** [2] - 240:19, 249:2
**file** [1] - 249:5
**fine** [1] - 254:22
**finish** [1] - 245:4
**first** [6] - 235:11, 237:21, 250:6, 250:7, 250:15, 252:6
**fit** [1] - 237:15
**flag** [1] - 236:24
**flagging** [1] - 246:24
**follow** [1] - 245:15
**following** [1] - 250:10
**foreclosed** [1] - 249:10
**foregoing** [1] - 255:4
**forget** [1] - 247:16
**formally** [1] - 242:19
**format** [1] - 237:19
**freedom** [1] - 245:17
**friendly** [1] - 253:5
**fringes** [1] - 251:12

## G

**gather** [1] - 254:13
**general** [1] - 244:19
**given** [1] - 246:10
**goal** [1] - 245:4
**GRACIA** [1] - 233:4
**Gracia** [3] - 235:1, 253:22, 253:24
**great** [1] - 247:12

**Gregory** [1] - 253:14
**guess** [2] - 241:15, 247:23

## H

**HALL** [2] - 233:16, 233:17
**hall** [1] - 235:4
**hall@adamslegal.net** [1] - 233:19
**happy** [1] - 244:11
**Haq** [2] - 253:24, 253:25
**harassing** [1] - 244:1
**harassment** [8] - 235:24, 238:25, 239:5, 240:8, 240:16, 240:23, 241:5, 252:20
**hash** [1] - 240:13
**hear** [1] - 245:20
**heard** [2] - 237:16, 251:15
**herself** [1] - 250:12
**Higgins** [1] - 233:14
**high** [1] - 249:18
**hold** [2] - 236:16, 249:3
**Homeland** [1] - 246:15
**Honor** [9] - 235:19, 236:6, 236:17, 239:17, 241:24, 243:4, 244:9, 248:14, 250:22
**HONORABLE** [1] - 233:10
**hostile** [3] - 236:3, 236:10, 240:15
**hours** [1] - 235:13
**HOWARD** [2] - 233:22
**hurt** [1] - 243:23

## I

**idea** [3] - 238:12, 241:8, 241:10
**identify** [1] - 254:5
**Ill** [1] - 233:16
**ILLINOIS** [1] - 233:1
**Illinois** [7] - 233:7, 233:14, 233:18, 233:23, 234:2, 238:5, 238:14
**immediately** [2] - 248:25, 250:10
**impeach** [1] - 249:16
**impeachment** [1] - 249:9
**Imran** [1] - 253:24
**inadmissible** [2] - 246:13, 247:25
**INC** [1] - 233:7
**include** [4] - 237:2, 243:5,

247:25, 248:5
**included** [4] - 242:19, 243:3, 244:10, 246:12
**includes** [3] - 239:5, 240:8, 240:9
**indeed** [1] - 247:11
**information** [3] - 237:22, 250:14, 250:17
**initial** [1] - 253:23
**inject** [2] - 238:11, 238:13
**instances** [1] - 252:2
**instead** [2] - 247:19, 249:17
**Instruction** [2] - 238:6, 238:14
**instruction** [15] - 235:25, 237:2, 237:7, 237:21, 238:4, 238:10, 238:19, 238:22, 238:24, 239:7, 239:10, 240:21, 241:1, 241:9, 241:14
**instructions** [5] - 235:12, 235:18, 236:2, 237:15, 237:25
**intend** [1] - 237:20
**intended** [1] - 239:18
**INTERNATIONAL** [1] - 233:7
**interrogatory** [1] - 249:7
**issue** [10] - 238:13, 240:19, 243:24, 244:3, 244:16, 244:19, 245:21, 248:15, 248:23, 252:1

## J

**January** [1] - 255:7
**jettison** [1] - 247:15
**job** [1] - 236:1
**Judge** [18] - 235:17, 237:20, 238:16, 239:13, 241:2, 242:21, 242:24, 245:1, 246:7, 249:6, 249:20, 250:4, 252:25, 253:12, 253:24, 254:17, 254:19
**jurors** [1] - 254:14
**jury** [12] - 237:16, 237:25, 239:18, 245:2, 245:4, 245:11, 246:1, 246:10, 247:1, 247:3, 247:7, 247:17

## K

**KATHRYN** [2] - 233:13, 233:13
**Kathryn** [1] - 235:5

**kathrynkorn@aol.com** [1] - 233:15
**kind** [3] - 242:8, 250:5, 251:8
**knowing** [2] - 251:3, 252:7
**KORN** [9] - 233:13, 233:13, 235:5, 241:18, 241:23, 243:11, 243:14, 254:4, 254:19
**Korn** [1] - 235:5
**KRISTA** [1] - 234:1
**krista_burgeson@ilnd. uscourts.gov** [1] - 234:3

## L

**laid** [1] - 239:24
**language** [3] - 237:15, 242:10, 242:15
**largest** [1] - 241:20
**last** [4] - 235:14, 236:15, 243:14, 243:15
**late** [1] - 235:14
**lavalieres** [1] - 246:4
**LAW** [2] - 233:13, 233:17
**lawyer** [1] - 245:17
**least** [2] - 239:19, 253:21
**lectern** [3] - 245:9, 245:10, 245:24
**left** [1] - 244:8
**legalese** [1] - 237:18
**less** [1] - 237:18
**level** [1] - 252:12
**liability** [2] - 238:15, 239:4
**likely** [1] - 248:7
**limited** [2] - 250:17, 252:1
**limiting** [2] - 237:2, 237:15
**line** [2] - 236:25, 243:7
**lining** [1] - 245:3
**list** [5] - 247:8, 248:12, 249:11, 250:6, 250:12
**look** [5] - 240:18, 240:21, 241:6, 242:9, 246:10
**looking** [1] - 242:14
**loved** [1] - 245:17
**lunch** [1] - 245:5

## M

**mails** [5] - 242:23, 243:20, 243:25, 244:3, 244:18
**maker** [2] - 241:19, 241:21
**map** [1] - 246:17
**MARIA** [1] - 233:4
**Maria** [1] - 253:23

**Mariachi** [1] - 246:17
**material** [1] - 236:22
**matter** [1] - 255:5
**mean** [2] - 248:20, 251:5
**mechanism** [1] - 252:20
**memory** [1] - 253:12
**mention** [1] - 243:16
**mentioned** [1] - 237:8
**Michigan** [1] - 233:22
**microphone** [2] - 245:9, 245:20
**microphones** [1] - 245:19
**middle** [1] - 253:23
**Miedema** [2] - 250:8, 253:14
**might** [4] - 239:15, 248:17, 249:14, 251:13
**minimum** [1] - 241:24
**miss** [1] - 236:20
**mixed** [8] - 238:23, 239:3, 239:7, 239:10, 239:16, 240:9, 240:22, 241:12
**Monday** [2] - 245:3, 254:13
**monkey** [1] - 245:9
**month** [1] - 254:11
**morning** [3] - 235:13, 235:15, 254:13
**most** [1] - 252:1
**mother** [1] - 253:22
**motions** [1] - 237:3
**motivated** [1] - 240:5
**motivating** [1] - 240:4
**motive** [9] - 238:23, 239:3, 239:7, 239:10, 239:16, 240:9, 240:22, 241:12, 241:20
**motives** [1] - 239:18
**move** [5] - 235:9, 235:10, 241:3, 244:13, 245:12
**moving** [2] - 244:17, 245:18
**MR** [35] - 233:16, 233:21, 235:4, 235:7, 235:17, 235:19, 235:22, 236:6, 236:17, 237:1, 237:6, 237:13, 238:16, 239:13, 239:17, 241:24, 243:9, 245:1, 245:7, 245:14, 245:25, 248:14, 250:22, 251:5, 251:25, 252:24, 252:25, 253:4, 253:8, 253:12, 253:18, 254:2, 254:12, 254:18, 254:20
**MS** [26] - 233:13, 233:21, 234:1, 235:5, 235:6, 237:20,

241:2, 241:18, 241:23, 242:21, 242:24, 243:11, 243:14, 244:8, 244:14, 244:21, 246:7, 247:23, 249:6, 249:20, 250:2, 253:22, 254:1, 254:4, 254:17, 254:19
**Murphy** [1] - 253:15

## N

**name** [1] - 253:23
**names** [1] - 249:5
**naming** [1] - 248:24
**national** [3] - 237:4, 237:8, 246:18
**near** [1] - 245:20
**need** [5] - 238:8, 249:15, 250:14, 251:16, 252:13
**never** [3] - 246:5, 251:18, 251:21
**new** [5] - 246:14, 247:24, 249:18, 253:4, 253:6
**next** [3] - 236:5, 238:22, 240:25
**Niemi** [1] - 253:15
**night** [1] - 235:14
**North** [1] - 233:17
**NORTHERN** [1] - 233:1
**nose** [1] - 248:10
**note** [3] - 236:17, 237:14, 243:14
**Number** [6] - 238:3, 238:4, 241:1, 241:3, 241:4, 241:14
**number** [3] - 243:12, 248:12, 249:17
**numbers** [1] - 243:7

## O

**o'clock** [2] - 233:8, 245:6
**objected** [1] - 238:8
**objection** [7] - 236:18, 239:1, 239:22, 240:12, 243:10, 243:11
**objections** [2] - 235:17, 253:2
**obligation** [1] - 250:25
**obviously** [1] - 253:1
**OF** [4] - 233:1, 233:10, 233:13, 233:17
**OFFICE** [2] - 233:13, 233:17
**OFFICIAL** [1] - 234:1
**Official** [1] - 255:7
**often** [1] - 247:14

**once** [1] - 237:3
**one** [12] - 237:1, 239:19, 241:10, 241:17, 241:18, 241:25, 243:3, 243:16, 244:18, 246:16, 248:14, 254:4
**ones** [4] - 244:1, 247:1, 247:21, 247:22
**open** [6] - 240:16, 240:23, 245:6, 247:5, 248:4, 248:8
**opening** [4] - 235:12, 245:15, 249:21, 249:25
**openings** [2] - 245:25, 246:3
**opens** [1] - 244:18
**opportunity** [4] - 248:17, 250:16, 250:18, 253:6
**order** [3] - 245:8, 250:6, 253:11
**origin** [3] - 237:4, 237:8, 246:18
**originally** [1] - 250:16
**otherwise** [1] - 240:1
**ought** [1] - 252:21
**own** [1] - 244:20

## P

**p.m** [1] - 233:8
**Page** [4] - 235:22, 235:23, 236:11
**paper** [2] - 247:18, 247:20
**par** [1] - 250:19
**paragraph** [3] - 235:23, 236:11, 236:12
**parenthetical's** [1] - 240:11
**part** [2] - 248:21, 253:1
**particular** [1] - 252:1
**parties** [1] - 247:12
**party** [1] - 240:2
**pasted** [1] - 246:16
**pastries** [1] - 254:6
**Pattern** [2] - 238:6, 238:14
**pattern** [5] - 236:12, 238:9, 238:19, 239:8, 239:16
**paw** [4] - 241:22, 241:23, 242:3, 242:11
**PDF** [1] - 236:11
**person** [1] - 241:19
**phrase** [1] - 238:24
**Plaintiff** [2] - 233:5, 233:13
**plaintiff** [14] - 235:4, 235:5, 236:8, 239:10, 239:24, 244:1, 244:25, 246:14,

250:5, 250:12, 252:6, 252:7, 252:11, 253:15
**plaintiff's** [10] - 238:3, 240:25, 241:14, 246:11, 250:11, 250:13, 250:20, 251:24, 253:15
**Plaintiff's** [1] - 241:4
**plan** [1] - 237:11
**pleading** [1] - 249:7
**point** [3] - 236:8, 236:14, 241:11
**policy** [2] - 243:18, 243:19
**pose** [1] - 238:1
**posed** [1] - 242:18
**position** [3] - 239:15, 245:9, 245:13
**positions** [1] - 251:6
**possibility** [1] - 241:18
**posted** [1] - 235:12
**practice** [7] - 239:3, 239:5, 240:2, 240:5, 240:6, 240:8, 241:7
**pre** [1] - 235:12
**pre-opening** [1] - 235:12
**preparation** [1] - 235:10
**prepare** [1] - 245:6
**presented** [1] - 242:14
**preserved** [1] - 237:12
**PRETRIAL** [1] - 233:10
**pretrial** [1] - 243:15
**pretty** [1] - 237:17
**previously** [1] - 237:24
**principle** [1] - 241:12
**problem** [6] - 244:17, 245:18, 248:9, 250:21, 251:18, 251:21
**procedure** [1] - 245:14
**proceed** [1] - 252:23
**PROCEEDINGS** [1] - 233:10
**proceedings** [2] - 254:24, 255:5
**progressed** [1] - 251:6
**promulgated** [1] - 237:21
**prongs** [1] - 243:17
**proposal** [2] - 238:23, 239:24
**propose** [2] - 237:7, 239:12
**proposed** [4] - 236:9, 236:14, 237:3, 238:3
**proposing** [1] - 238:14
**protected** [2] - 238:17, 240:3
**protocol** [1] - 253:1
**provide** [2] - 246:14, 247:24
**provided** [3] - 240:1, 246:11,

254:6
**proximate** [6] - 238:5, 238:8, 238:12, 238:17, 241:8, 242:11
**purposes** [1] - 245:7
**push** [2] - 244:5, 244:22
**pushed** [1] - 244:6
**put** [14] - 236:3, 241:11, 244:11, 244:12, 247:16, 248:18, 249:12, 250:9, 250:24, 251:7, 252:6, 253:10, 254:11
**putting** [4] - 248:9, 248:16, 251:9, 252:6

## Q

**questions** [5] - 238:2, 242:16, 244:24, 246:6, 250:3
**quite** [2] - 250:23, 252:16

## R

**raise** [3] - 244:25, 252:12, 253:1
**rare** [1] - 251:22
**rather** [2] - 236:2, 240:13
**rationalized** [1] - 248:15
**re** [1] - 243:14
**re-read** [1] - 243:14
**read** [1] - 243:14
**ready** [2] - 242:15, 254:14
**really** [2] - 242:6, 251:20
**reason** [2] - 245:16, 247:5
**reasons** [1] - 246:22
**rebut** [2] - 250:14, 250:17, 252:16
**rebuttal** [3] - 251:14, 251:23, 252:14
**record** [4] - 236:21, 248:21, 252:5, 255:5
**recorded** [1] - 245:21
**recording** [2] - 245:19, 245:22
**recross** [1] - 253:7
**red** [1] - 236:25
**refer** [1] - 240:10
**reference** [1] - 235:23
**references** [1] - 237:4
**refers** [1] - 239:4
**reflect** [1] - 242:10
**regard** [1] - 237:25
**regarding** [3] - 237:3, 242:1, 246:8

**related** [1] - 241:4
**release** [5] - 247:3, 247:4, 247:9, 247:17, 247:22
**released** [1] - 247:9
**remind** [1] - 238:4
**removed** [1] - 236:15
**report** [1] - 246:20
**Reporter** [2] - 234:1, 255:7
**REPORTER** [1] - 234:1
**reporting** [1] - 252:20
**require** [1] - 250:20
**requirement** [1] - 251:19
**requires** [2] - 235:25, 246:25
**research** [3] - 239:23, 240:14, 240:18
**reserve** [2] - 242:5, 242:13
**respect** [4] - 235:22, 238:16, 245:2, 251:5
**response** [1] - 244:4
**responses** [1] - 249:7
**retaliation** [11] - 238:16, 238:20, 239:6, 240:9, 240:10, 240:17, 240:24, 241:5, 241:13, 241:16
**retaliatory** [1] - 241:20
**retention** [1] - 243:18
**Riordan** [1] - 235:7
**RIORDAN** [21] - 233:21, 235:7, 235:19, 235:22, 236:6, 236:17, 237:1, 237:6, 237:13, 239:17, 241:24, 243:9, 245:25, 248:14, 250:22, 251:5, 251:25, 252:24, 253:18, 254:2, 254:20
**RMR** [1] - 255:7
**rule** [1] - 244:19
**ruled** [2] - 246:12, 249:20
**running** [1] - 235:13

## S

**save** [1] - 243:19
**scope** [1] - 253:2
**second** [2] - 235:23, 236:12
**secondly** [1] - 252:5
**Security** [1] - 246:16
**see** [4] - 238:8, 239:1, 245:10
**selection** [2] - 245:2, 245:4
**sent** [1] - 243:25
**sentence** [1] - 236:15
**series** [1] - 249:18
**served** [1] - 253:25

**session** [1] - 243:15
**set** [2] - 235:12, 235:17
**Seventh** [1] - 238:10
**severe** [1] - 235:24
**sexual** [2] - 235:24, 241:5
**show** [2] - 243:7, 243:25
**sides** [1] - 241:11
**SigmaTron** [4] - 235:1, 235:6, 235:7, 243:17
**SIGMATRON** [1] - 233:7
**silly** [1] - 252:16
**Silverman** [6] - 241:19, 242:2, 242:23, 243:25, 250:8, 253:14
**simply** [1] - 249:11
**sister** [1] - 253:15
**sit** [2] - 249:1
**six** [1] - 246:12
**skin** [1] - 248:10
**smaller** [1] - 244:2
**soon** [3] - 237:17, 238:2, 254:14
**sorry** [2] - 241:2, 242:25
**South** [2] - 233:22, 234:2
**specifically** [1] - 246:15
**standard** [3] - 239:19, 239:20, 252:13
**standing** [1] - 245:8
**start** [3] - 240:20, 242:14, 249:18
**statement** [5] - 235:12, 235:23, 236:2, 237:16, 245:15
**STATES** [1] - 233:1
**status** [1] - 248:25
**statute** [3] - 238:25, 239:2, 241:7
**still** [1] - 239:4
**Street** [2] - 233:17, 234:2
**subchapter** [1] - 240:1
**subject** [1] - 248:19
**Subparagraph** [3] - 239:2, 239:25, 241:13
**subpoena** [1] - 253:25
**subset** [2] - 244:2, 247:14
**suggesting** [1] - 242:2
**summary** [2] - 242:17, 243:5
**suppose** [1] - 240:16
**supposed** [1] - 250:9
**Supreme** [1] - 242:10
**surprise** [5] - 251:13, 252:10, 252:11, 252:12
**swaths** [1] - 248:6

**Sweetest** [1] - 254:6
**system** [1] - 246:25

## T

**table** [1] - 247:19
**tcarpenter@**
  **howardandhoward.com** [1]
  - 233:24
**technically** [1] - 248:20
**technology** [1] - 245:19
**terminated** [1] - 242:3
**termination** [1] - 238:18
**terminology** [1] - 242:11
**terms** [1] - 236:22
**testify** [1] - 251:3
**testimony** [1] - 254:5
**testing** [1] - 248:23
**THE** [48] - 233:10, 235:1,
  235:2, 235:8, 235:21, 236:1,
  236:7, 236:19, 237:5,
  237:10, 237:14, 237:23,
  238:21, 239:14, 239:21,
  241:6, 241:22, 242:5,
  242:22, 243:6, 243:10,
  243:13, 243:22, 244:13,
  244:15, 244:22, 245:4,
  245:12, 245:16, 246:2,
  246:24, 248:3, 248:20,
  249:14, 250:1, 250:19,
  251:2, 251:11, 252:9, 253:3,
  253:7, 253:9, 253:19,
  253:25, 254:3, 254:9,
  254:13, 254:22
**thinking** [1] - 241:15
**thinks** [1] - 252:21
**three** [1] - 250:7
**throw** [2] - 248:5, 249:17
**tie** [1] - 254:20
**TIFFANY** [1] - 233:21
**Tiffany** [1] - 235:6
**Tim** [1] - 235:7
**TIMOTHY** [1] - 233:21
**together** [1] - 235:13
**Tony** [1] - 253:24
**took** [1] - 246:10
**topic** [2] - 252:22, 253:4
**topics** [1] - 253:6
**total** [1] - 251:5
**toward** [1] - 246:1
**TRANSCRIPT** [1] - 233:10
**transcript** [2] - 245:22, 255:4
**transcripts** [2] - 249:16,

249:18
**trial** [9] - 235:10, 237:25,
  240:20, 244:10, 245:17,
  247:14, 247:19, 249:24
**trials** [1] - 251:18
**trick** [1] - 251:20
**trickle** [1] - 254:15
**triordan@**
  **howardandhoward.com** [1]
  - 233:24
**Trujillo** [1] - 253:16
**Truppa** [1] - 253:24
**try** [5] - 235:9, 238:1, 240:13,
  240:14, 241:15
**trying** [4] - 239:11, 241:8,
  243:25, 252:13
**tucked** [1] - 236:12
**turn** [2] - 236:10, 245:25
**two** [3] - 239:18, 243:16,
  246:19

## U

**under** [1] - 238:25
**undergone** [1] - 252:15
**unfair** [1] - 251:8
**UNITED** [1] - 233:1
**unlawful** [5] - 239:3, 239:4,
  240:1, 240:7, 241:7
**unreliability** [2] - 243:16,
  243:17
**unreliable** [1] - 243:12
**up** [5] - 243:7, 245:3, 248:15,
  252:17, 253:4
**update** [1] - 249:3
**updated** [1] - 242:17
**uploaded** [1] - 249:2
**uploading** [1] - 248:24
**USC** [1] - 239:25

## V

**various** [1] - 246:22
**version** [1] - 252:21
**versus** [1] - 235:1
**voice** [1] - 245:19
**volume** [9] - 242:20, 243:9,
  243:12, 243:22, 243:24,
  244:4, 244:16, 244:18,
  244:23
**vs** [1] - 233:6

## W

**waived** [1] - 248:17
**waiving** [1] - 237:7
**West** [1] - 233:14
**whatsoever** [1] - 242:1
**withdrawn** [1] - 243:1
**withhold** [1] - 241:25
**witness** [3] - 245:10, 245:13,
  250:6
**witnesses** [10] - 245:3, 245:7,
  250:3, 250:7, 250:10,
  250:13, 250:15, 252:14,
  253:5, 253:10
**wording** [2] - 242:7, 242:13
**worry** [1] - 248:21
**written** [2] - 239:22, 240:11

## Y

**year** [1] - 254:11