| | | |
|---|---|---|
| MARIA N. GRACIA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 11 C 07604 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| SIGMATRON INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Maria Gracia filed this lawsuit against her former employer, SigmaTron International, Inc., alleging workplace harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[1] *See* R. 1, Compl.[2] On December 18, 2014, after a three-day trial, a jury returned a verdict for Gracia on her retaliation claim. R. 184, 12/18/14 Minute Entry. Gracia now moves under Federal Rule of Civil Procedure 54(d) for reasonable attorneys' fees and costs as permitted by Title VII and 28 U.S.C. § 1920. *See* R. 280, Pl.'s Fee Mot.; *see also* 42 U.S.C. § 2000e-5(k). SigmaTron in turn seeks to keep specified portions of Gracia's motion under seal. *See* R. 281, Def.'s Mot. to Seal. For the reasons stated below, Gracia's motion for attorneys' fees and costs is granted in part and denied in part, and SigmaTron's motion to maintain the seal is denied.

---

[1]This Court has subject matter jurisdiction over the case under 28 U.S.C. § 1331. The judgment is on appeal, but this Court still has jurisdiction to decide collateral non-merits issues, such as attorney's fees and costs.

[2]Citations to the record are noted as "R." followed by the docket number and, when necessary, the page or paragraph number.

# I. Background

The Court has previously detailed the facts of this case in its summary judgment opinion, R. 87, 10/25/13 Opinion, and its post-trial opinions, R. 204, 4/21/15 Opinion; R. 222, 9/17/15 Opinion, so only the most pertinent facts are set forth here.

Gracia worked for SigmaTron from 1999 to 2008. In late 2008, Gracia told SigmaTron and the Equal Employment Opportunity Commission that she was being harassed by her immediate supervisor. Shortly after she complained, SigmaTron fired Gracia, and in October 2011, Gracia filed this lawsuit, alleging workplace discrimination and hostile work environment on the basis of gender and national origin (Count One) and retaliation (Count Two) in violation of Title VII. *See* Compl.

Following three years of litigation and a three-day trial, a jury returned a verdict for Gracia on her retaliation claim.[3] 12/18/14 Minute Entry. The jury awarded Gracia $57,000 in compensatory damages and $250,000 in punitive damages. *Id.* SigmaTron thereafter moved for a new trial, judgment as a matter of law, and remittitur of the damages award. *See* R. 196. The Court denied SigmaTron's motions for judgment as a matter of law and a new trial, but granted SigmaTron's motion for remittitur only to lower the compensatory damages award to $50,000 so that the overall damages award would not exceed the statutory cap of

---

[3]The jury returned a verdict for SigmaTron on Gracia's sexual-harassment claim. 12/18/14 Minute Entry. Before the jury trial, the Court dismissed Gracia's national-origin harassment claim on summary judgment, so that claim was not tried to the jury. *See* 10/25/13 Opinion.

$300,000, *see* 42 U.S.C. § 1981a(b)(3)(D). *See* 4/21/15 Opinion. The Court later determined that Gracia was also entitled to $74,478.14 in equitable damages. *See* 9/17/15 Opinion. Final judgment—in the amount of $374,478.14—was entered on September 17, 2015, *see* R. 223, and SigmaTron timely appealed to the Seventh Circuit,[4] R. 228.

Gracia has since filed a bill of costs and a motion for attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 54(d), 28 U.S.C. § 1920, and 42 U.S.C. § 2000e-5(k). *See* Pl.'s Fee Mot.; R. 233, Bill of Costs; R. 286-2, Am. Bill of Costs. Gracia seeks $262,500.00 in attorneys' fees, $5,574.97 in non-taxable expenses, and $7,216.24[5] in taxable costs. *See* Pl.'s Fee Mot. at 1; Am. Bill of Costs. SigmaTron in turn has objected to the bulk of the costs that Gracia seeks, as well as to the hourly rate requested for Gracia's attorneys, *see* R. 266, Def.'s Obj. to Bill of Costs; R. 285, Def.'s Fee Mot. Resp., and has filed a motion to keep certain information in Gracia's fee motion under seal, Def.'s Mot. to Seal.

## II. Legal Standard

Under 42 U.S.C. § 2000e-5(k), "the court, in its discretion, may allow the prevailing party [in a Title VII action] . . . a reasonable attorney's fee (including expert fees) as part of the costs." Federal Rule of Civil Procedure 54(d)(1) allows a

---

[4]As noted earlier, the appeal is on the merits of the judgment, so this Court has jurisdiction to decide the fee petition. *See Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs*, 134 S. Ct. 773, 780 (2014).

[5]Gracia's original bill of costs sought $7,276.24. Bill of Costs at 1. Gracia, however, filed an amended bill of costs in conjunction with her reply brief, R. 286, which reduced the total by $60.00 to eliminate witness fees that had been charged for two witnesses who had not testified at trial. R. 286, Pl.'s Reply Br. at 9 n.10; Am. Bill of Costs.

prevailing party to recover costs other than attorneys' fees unless a federal statute, federal rule, or court order states otherwise.

### III. Analysis

Gracia seeks to recover $262,500.00 in attorneys' fees, $5,574.97 in non-taxable costs, and $7,216.24 in taxable costs from SigmaTron.[6] *See* Pl.'s Fee Mot. at 1; Am. Bill of Costs. With regard to attorneys' fees, SigmaTron agrees that the *hours* billed by Gracia's attorneys, Kathryn Korn and Hall Adams, were reasonable. *See* R.280-1, 12/4/15 Letter from SigmaTron at 1 ("In the spirit of Local Rule 54.3, SigmaTron will not object to the number of hours Plaintiff is seeking for Hall Adams's time . . . or to the number of hours Plaintiff is seeking for Kathryn Korn's time . . . ."). SigmaTron objects, however, to the hourly *rate* that Gracia seeks for both Korn and Adams. *See* Def.'s Fee Mot. Resp. With regard to costs, SigmaTron claims that (1) the taxable expenses sought via the bill of costs cannot be recovered because the bill of costs was not accompanied by an affidavit or any substantiating documentation, *see* Def.'s Obj. to Bill of Costs; Def.'s Fee Mot. Resp. at 14-15, and (2) the majority of the non-taxable expenses sought cannot be recovered because they should have been included in the bill of costs or were not reasonable or necessary, *see* Def.'s Fee Mot. Resp. at 12-14. SigmaTron also seeks to keep portions of Gracia's

---

[6]These fees and costs represent Gracia's attorneys' work through September 30, 2015. *See* Pl.'s Fee Mot. at 8. Gracia's motion indicates that she would also like to pursue the recovery of fees and costs incurred after that date. *See id.* Gracia should abide by Local Rule 54.3 and confer with SigmaTron. The parties should attempt in good faith to agree upon the fees and expenses that should be awarded. *See* L.R. 54.3(d). If the parties are unable to reach an agreement, Gracia may then file a motion for additional fees and costs. Any new motion should include an estimate for *all* future attorneys' fees and costs so as to avoid needlessly prolonging this litigation.

fee motion sealed—in particular, all references to the number of Howard & Howard attorneys that represented SigmaTron, the Howard & Howard attorneys' hourly rates, and the total amount of attorneys' fees SigmaTron paid Howard & Howard for its defense. *See* Def.'s Mot. to Seal at 2-3. The Court addresses each of SigmaTron's objections, as well as SigmaTron's motion to maintain the seal, in turn.

## A. Hourly Rate

To determine a reasonable attorney's fee, district courts use the lodestar method, "multiplying the 'number of hours reasonably expended on the litigation . . . by a reasonable hourly rate.'" *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (*Pickett II*) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Here, SigmaTron does not object to the time billed by Gracia's attorneys, *see* 12/4/15 Letter from SigmaTron at 1, so the Court need only determine what constitutes a reasonable hourly rate for both Korn and Adams. "A reasonable hourly rate is based on the local market rate for the attorney's services." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). To figure out the market rate, there is ideal evidence and (absent the ideal evidence) next-best evidence:

> The best evidence of the market rate is the amount the attorney actually bills for similar work, but if that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases.

*Id.* As between the two "next-best" alternatives, the Seventh Circuit has "indicated a preference for third party affidavits that attest to the billing rates of comparable attorneys." *Pickett II*, 664 F.3d at 640. That said, "conclusory affidavits from attorneys 'merely opin[ing]' on the reasonableness of another attorney's fee—unlike

affidavits describing what 'comparable attorneys charge for similar services'—have little probative value." *Montanez*, 755 F.3d at 554 (quoting *Pickett II*, 664 F.3d at 647).

The party seeking the fee award bears the burden of establishing the market rate for their attorneys' services. *Montanez*, 755 F.3d at 553. Should the party fail to carry that burden, the Court can independently determine the appropriate hourly rate. *Id.* Once the party seeking the award has met their burden, however, the opposing party has the burden of demonstrating why a lower rate should be awarded. *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1313 (7th Cir. 1996). That said, if the Court "decides that [a] proffered rate overstates the value of an attorney's services, it may lower [the rate] accordingly." *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003); *see Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 767 (7th Cir. 1982) ("A judge may well approach high rates with skepticism, and he may exercise some discretion in lowering such rates.").

### 1. Hall Adams

Gracia asks the Court to award Adams a billing rate of $500 per hour in this matter. *See* Pl.'s Fee Mot. at 3. In support of this request, Gracia has supplied billing records from another case in which Adams billed a different client $500 per hour. R. 280-5 at Exh. A, Hall Adams's Invoices. Although it is true that the invoices do not explicitly say what type of case these bills are for, *see* Def.'s Fee Mot. Resp. at 10-11, the descriptions of the services rendered prove that it is a civil

litigation matter and that Adams billed this client for his services as a litigator. *See* R. 280-5 at Exh. A, Hall Adams's Invoices at 6, 8, 12, 14, 16, 18, 20 (referencing work preparing a complaint and a motion for summary judgment, responding to a motion for summary judgment, reviewing a Seventh Circuit employment-law case, and attending status hearings). What's more, some of the billing entries show that the subject matter is employment related: Adams billed time to the client to review a Seventh Circuit employment-law case, *Hess v. Bresney*, 784 F.3d 1154 (7th Cir. 2015), and to hold a telephone conference and correspond about resignation agreements. R. 280-5 at Exh. A, Hall Adams's Invoices at 18, 27 ("[t]elecom/corresp . . . re Resignation Agreements"). These records show that the other civil case for which Adams actually billed $500 per hour is similar enough legal work— employment litigation—to be helpful in supporting Adams's proposed market rate for the instant case.

Gracia has also supplied declarations from three experienced attorneys in practice in the Chicago legal community: Robert Cummins, Myron Cherry, and Lawrence Kipperman. *See* R. 280-3 at Exh. F, Cummins Dec.; R. 280-3 at Exh. H, Kipperman Dec.; R. 287-1, Cherry Dec. The strength of these declarations vary. The Cummins Declaration has little probative value; it states in a conclusory fashion that a rate of $500 per hour is reasonable and consistent with market rates for similarly experienced attorneys performing comparable work, *see* R. 280-3 at Exh. F, Cummins Dec. ¶ 6, but does not substantiate this opinion with any information— such as an hourly rate charged by Cummins for similar work—that would make his

opinion on the matter particularly helpful. The Cherry and Kipperman Declarations, however, are probative "next-best" evidence. Both Cherry and Kipperman are experienced employment lawyers. *See* Cherry Dec. ¶ 2; Kipperman Dec. ¶ 3. They each set forth their own rates as evidence of what similarly experienced attorneys charge for comparable work, and they each provide enough information about their professional backgrounds such that they can be expected to have informed opinions on (1) the rates sought within the district for similar work and (2) the reasonableness of the specific rate sought for Adams's services. *See* Cherry Dec. ¶¶ 2, 4-7, 9; Kipperman Dec. ¶¶ 3-8. Both declarations aver that a rate of $500 per hour is within the range of rates currently charged by attorneys in Chicago with similar experience for similar services. *See* Cherry Dec. ¶ 9; Kipperman Dec. ¶ 8.

Together, the billing records of an actually paying client and the declarations satisfy Gracia's burden: here, there is best evidence *and* next-best evidence establishing that the market rate for Adams's services is $500 per hour. SigmaTron has not supplied any evidence that undermines the proposed hourly rate, so the Court awards Adams a billing rate of $500 per hour. Because Adams billed Gracia for 121.4 hours of work, R. 284-2, Pl.'s Local Rule 54.3(e) Statement at 2, Gracia is awarded $60,700.00 for Adams's attorney's fees.

### 2. Kathryn Korn

Gracia also asks that the Court award Korn a billing rate of $500 per hour. *See* Pl.'s Fee Mot. at 3. Here Gracia, however, has *not* met her burden. Gracia did

not supply "best" evidence proving that Korn has ever billed at or near a rate of $500 per hour for other similar work. In fact, the only invoices on record—Korn's invoices for this very case—undermine Gracia's assertion that $500 per hour is a reasonable hourly rate for Korn: Korn billed Gracia at $250 per hour in 2008-2009, then $300 per hour in 2011, and lastly raised her rate to $500 per hour (a jump of $200) in 2012. *See* R. 280-3 at Exh. D, Kathryn Korn's Invoices. Gracia does not dispute that Korn's general billing rate was much lower than $500 per hour in 2008-2011. *See* Pl.'s Fee Mot. at 7; R. 280-3, 10/22/15 Letter to SigmaTron at 3. Indeed, a letter authored by Korn and attached to the fee motion shows that Korn charged at least one other client $250 per hour in 2008, and then raised her rate "across the board" to $300 per hour in 2011. *See* 10/22/15 Letter to SigmaTron at 3. Thus, the best evidence indicates that Korn's market rate was $250 per hour in 2008-2009, and $300 per hour in 2011. And there is no evidence that a client actually was charged (and paid) a rate for Korn of $500 per hour in 2012 to 2015.

To be sure, the Cherry and Kipperman Declarations are probative of Korn's proposed market rate (as they were for Adams's proposal). That said, their evidentiary value is undermined by Korn's actual past rates. It is not reasonable to think that the market rate for Korn's services rose by $200 per hour between 2011 and 2012. Instead, the past history of fee increases (or lack thereof) really supports a finding that reasonable rate increases would follow the same pattern of historical increases. Specifically, after 2011, Korn's hourly rate rose at a pace and in an amount similar to previous years: given the shift from $250 per hour in 2009 to

$300 per hour in 2011, a raise of $50 per hour every two years is reasonable. So, the Court finds that $350 per hour is a reasonable hourly rate for Korn's work from 2012-2013, and $400 per hour is a reasonable hourly rate for Korn's work from 2014-2015.

It is true that this finding means that Korn will receive $100 per hour less than Adams for services she provided during the same span of time (2014-2015). The Court notes, however, that—in addition to being consistent with the evidence discussed above—attributing a lower market rate to Korn is justified by the attorneys' disparate litigation and trial experience. Yes, Korn has been a practicing attorney for longer than Adams, but her résumé demonstrates that she has considerably less litigation experience than Adams: she has worked on three major trials, one matter seeking a writ of prohibition, one Seventh Circuit appeal, and approximately 90 to 180 administrative claims. *See* R. 280-3 at Exh. B, Korn Résumé at 16-18 (estimating that a new charge was filed with the EEOC or a state agency against Korn's corporate client by an aggrieved employee once a month for fifteen years); 10/22/15 Letter to SigmaTron (estimating that a new charge was filed with the EEOC or other agency against Korn's corporate client by an aggrieved employee every eight weeks for fifteen years). Adams, on the other hand, has tried cases to verdict over 100 times, and secured at least 18 settlements. *See* R. 280-3 at Exh. A, Adams CV at 10-12. What's more, a rate of $400 per hour is consistent with the rates charged by several attorneys from SigmaTron's Howard & Howard team who have been practicing law for similarly lengthy periods of time. For example,

Tim Riordan—a practicing attorney for 51 years who "has tried scores of bench and jury trials in state and federal courts in Illinois"—billed $370 to $410 per hour from 2011 to 2015, and Scott Levin—a practicing attorney for 33 years who has "substantial litigation experience"—billed $405 per hour in 2014. *See* R. 280-1, 12/14/15 Letter to Gracia at 3; R. 280-1 at Exh. A, Howard & Howard Bios at 10, 14. Accordingly, awarding Korn a billing rate of $400 for 2014-2015 is reasonable, even though it is lower than the rate awarded to Adams for the same time period.

To summarize, the Court awards Korn $250 per hour for the work she did in 2008-2009, $300 per hour for the work she did in 2011, $350 per hour for the work she did in 2012-2013, and $400 per hour for the work she did in 2014-2015, plus prejudgment interest for fees accrued in 2008-2009 and 2011-2013.[7] Gracia is instructed to calculate the total amount in fees that she is owed for Korn's services—using these hourly rates and factoring in prejudgment interest—and to provide that total to the defense and to the Court. That calculation is due by December 7, 2016. SigmaTron may respond with any objections to Gracia's calculations by December 19, 2016.

---

[7]Gracia asks the Court to award the current market billing rate for the entirety of Korn's representation to compensate for the delay in receiving attorneys' fees. *See* Pl.'s Fee Mot. at 7-8. Gracia acknowledges, though, that a court can compensate for delay in payment by (1) calculating a fee award using the lawyer's current billing rate for the entire period of representation *or* (2) by calculating a fee award using the lawyer's rate(s) at the time(s) the lawyer represented the client and adding interest to that amount. *See id.* at 7; *see also Pickett v. Sheridan Health Care Ctr.*, 813 F.3d 640, 647 (7th Cir. 2016) (*Pickett III*). The Court thinks it more appropriate here—where Gracia has not satisfied her burden of establishing the current market rate for Korn's work—to calculate the fee award using Korn's historical rates and adding prejudgment interest.

## B. Taxable Costs

Under 28 U.S.C. § 1920, a federal court may tax as costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828. The procedure for seeking costs starts with an under-oath declaration:

> Before any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed.

28 U.S.C. § 1924. The standard form for presenting a bill of costs form is AO 133, which further instructs those filling out the form to "[a]ttach to [the] bill an itemization and documentation for requested costs in all categories." *See, e.g.*, Bill of Costs; Am. Bill of Costs.

"Taxing costs against a losing party requires two inquiries: (1) whether the cost imposed on the losing party is recoverable and (2) if so, whether the amount assessed for that item was reasonable." *Majeske v. City of Chi.*, 218 F.3d 816, 824 (7th Cir. 2000). "[D]istrict courts enjoy wide discretion in determining and awarding reasonable costs," *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*,

924 F.2d 633, 642 (7th Cir. 1991), but "[t]here is a presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005). That said, if the prevailing party does not adequately provide an itemization or documentation for certain costs, those costs may be denied. *See Montanez*, 755 F.3d at 559.

Gracia seeks $350.00 for fees of the clerk, $720.00 for fees for service of summons and subpoena, $4,251.30 for fees for transcripts, $110.00 for fees for witnesses, and $1,784.94 for fees for copies. Am. Bill of Costs at 1. SigmaTron claims that these costs cannot be recovered because Gracia did not attach an affidavit to the bill of costs or supply any substantiating documentation. *See* Def.'s Obj. to Bill of Costs at 2-3; Def.'s Fee Mot. Resp. at 14-15. But the bill-of-costs form itself—signed and submitted by Korn on behalf of Gracia—certifies that the requested costs were correct, necessary, and reasonable: "I declare under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed." Am. Bill of Costs at 1. This certification meets the requirements for an affidavit under 28 U.S.C. § 1924. *See Kristofek v. Vill. of Orland Hills*, 2014 WL 7145543, at *2 (N.D. Ill. Dec. 15, 2014); *Hecny Transp., Inc. v. Chu*, 2005 WL 2347228, at *2 (N.D. Ill. Sept. 23, 2005). Nevertheless, the Court must determine for itself whether the costs sought are allowable, reasonable, and necessary.

Gracia is awarded the full $350.00 for the filing fee and $110.00 for witness fees. These costs are statutorily allowable, 28 U.S.C. § 1920(1) and (3), reasonable, and necessary. Under 28 U.S.C. § 1914(a), parties bringing civil suit are required to pay a filing fee of $350.00; Gracia paid this fee, R. 4. Under 28 U.S.C. § 1821, a witness attending federal court is entitled to a fee of $40.00 per day of attendance. The witnesses for whom Gracia seeks fees each attended one day of trial, *see* R. 191, 12/17/14 Trial Tr. at 3, and the fees sought do not exceed $40.00 per witness, Am. Bill of Costs at 2.

Gracia is also awarded $3,967.70 in transcript fees. Money spent to obtain a copy of a transcript is recoverable, 28 U.S.C. § 1920(2), so long as the transcript was "necessarily obtained" and the cost of the transcript did not exceed the "regular copy rate as established by the Judicial Conference of the United States and in effect at the time the transcript . . . was filed." L.R. 54.1(b). The current regular copy rate, in effect since January 26, 2012, is $3.65 per page for original transcripts and $0.90 per page for copies. A prevailing party may also recover fees paid to the court reporter for his or her attendance, L.R. 54.1(b), but these fees cannot exceed $110.00 for a half day (four hours or less) and $220.00 for a full day. Here, Gracia produced eight invoices and one check to substantiate her claim for transcript costs. *See* R. 280-12 at Exh. B, Transcript Invoices. Review of the eight invoices reveals that Gracia did not pay more than the regular copy rate. She did, however, pay more than is allowed in attendance fees on three occasions. *See* R. 280-12 at Exh. B, Transcript Invoices at 12 (charging $280.00 for a full-day appearance); *id.* at 13

(charging $120.00 for a half-day appearance); *id.* at 14 (charging $140.00 for a half-day appearance). So Gracia's award must be reduced by the amount she was charged in excess of the cap on attendance fees ($100.00 in total). Costs also must be reduced by what is listed as a $183.60 check payment because the check does not specify what transcript Gracia paid for or what rates she was charged, *see id.* at 9, which leaves the Court unable to determine whether the transcript was reasonably or necessarily obtained.

Gracia's request for $720.00 for fees for service of summons and subpoena is denied. Although those types of costs are ordinarily recoverable, they cannot "exceed the marshal's fees, no matter who actually effected service." *Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir. 1996). A letter attached to Gracia's fee motion explains that Gracia's attorneys spent $620.00 for the service of trial subpoenas and $100.00 for the service of a deposition subpoena. *See* R. 280-12, 1/5/16 Letter to SigmaTron at 2. Attached to this letter is an illegible check for $620.00, *see* R. 280-12 at Exh. A, Subpoena Check; there is no documentation for the $100.00 expenditure, *see* 1/15/16 Letter to SigmaTron at 2. The Court cannot determine from the information provided what rates Gracia was charged for service of any these subpoenas, so Gracia may not recover any of the $720.00.

Gracia's request for $1,784.94 in copying fees is also denied. Copying costs are recoverable so long as the copies were necessarily obtained. 28 U.S.C. § 1920(4). To prove that copies were necessarily obtained, a party is "not required to submit a bill of costs containing a description so detailed as to make it impossible

economically to recover photocopying costs." *Northbrook Excess*, 924 F.2d at 643. A party is, however, "required to provide the best breakdown obtainable from retained records." *Id.* Here, Gracia has provided invoices, *see* R. 280-12 at Exh. C, Photocopying Invoices, but the invoices do not say, even generally, what was copied or who the copies were provided to, and most do not say what rate was charged. The Court is thus unable to verify that any of these copy costs were reasonable and necessary.

All told, then, Gracia is awarded $4,427.70 in taxable costs, as summarized in this chart:

| Expense | Requested | Granted |
|---|---|---|
| Fees of the Clerk | $350.00 | $350.00 |
| Fees for Witnesses | $110.00<br>($40.00 + $30.00 + $40.00) | $110.00 |
| Fees for Transcripts | $4,251.30<br>($476.20 + $72.90 + $183.60 + $754.20 + $655.25 + $903.70 + $373.00 + $574.05 + $258.40) | $3,967.70<br>($476.20 + $72.90 + $754.20 + $655.25 + [$903.70 - $60.00] + [$373.00 - $10.00] + [$574.05 - $30.00] + $258.40) |
| Fees for Service of Summons and Subpoena | $720.00<br>($620.00 + $100.00) | $0 |
| Fees for Copies | $1,784.94 | $0 |
| | | Total Award:<br>$4,427.70 |

## C. Non-Taxable Costs

"'[E]xpenses of litigation that are distinct from either statutory costs or the costs of the lawyer's time reflected in hourly billing rates—expenses for such things as postage, long distance phone calls, xeroxing, travel, paralegals and expert witnesses—are part of the reasonable attorney's fee allowed" to a prevailing party. *See Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1144 (7th Cir. 1994) (quoting *Heiar v. Crawford Cnty.*, 746 F.2d 1190, 1203 (7th Cir. 1984)); *see also Henry v. Webermeier*, 738 F.2d 188, 192-93 (7th Cir. 1984).

Separate from the bill of costs, Gracia seeks $4,800.00 for fees paid to Legal Visual Services for a courtroom technology consultant, $200.00 for cash advanced to trial witness David Niemi, $167.00 for money spent retrieving records of SigmaTron's prior sexual harassment history, $317.95 for fees paid to Marshall Investigative Services to locate a potential trial witness, $6.70 for Adams's postage costs, $6.20 for Adams's photocopying costs, $6.00 for Adams's parking costs, and $71.12 for Korn's and Adams's mileage costs. *See* Pl.'s Fee Mot. at 9-10; R. 280-11, Non-Taxable Cost Documentation. SigmaTron claims that the majority of these expenses cannot be recovered because they should have been included in the bill of costs, and in any event, they were not reasonable or necessary. *See* Def.'s Fee Mot. Resp. at 12-14. The Court will discuss each item in turn.

Gracia is awarded $4,800.00 for the services of the courtroom technology consultant from Legal Visual Services. SigmaTron concedes that this is a recoverable expense, but argues that $3,500.00 would "be a more appropriate

amount." Def.'s Fee Mot. Resp. at 14. SigmaTron does not, however, explain why it believes $4,800.00 is too much or why $3,500.00 would be more reasonable. *See id.* Korn and Adams did reasonably take advantage of the courtroom's litigation display technology, which showed witnesses and jurors the exhibits on monitors (including touch-screen monitors for the lawyers and witnesses, and monitors for the jurors in the jury box). Hiring someone to become familiar with how to digitally display the exhibits is a reasonable expense, although one that should eventually go down in cost as the bar becomes more familiar with the display technology (and many firms will be able to do this in-house with a paralegal or another member of the trial team). In any event, absent further adversarial presentation, the Court cannot say that $4,800.00 is an unreasonable amount of money for the service provided.

The Court additionally awards Gracia $71.12 in mileage costs. An attorney's travel expenses can be recoverable. *See Downes*, 41 F.3d at 1144. Here, Korn and Adams supplied billing records and sworn declarations providing explanations for the mileage charges: (1) on December 12, 2014, Korn drove 54 miles round trip to meet with Eduardo Trujillo at his home to prepare for his trial testimony, R. 280-4, Korn Dec. ¶ 3.c.; (2) on December 14, 2014, Korn drove 43 miles round trip to meet with Michael Murphy at a rest stop to prepare for his trial testimony, *id.* ¶ 3.d; (3) on March 19, 2014, Adams drove 30 miles round trip to Korn's office for his introductory meeting with Gracia,[8] R. 280-5, Adams Dec. ¶ 3.b.; *see* R. 280-3 at Exh.

---

[8]The March 19, 2014 date appears to be erroneous. Adams's billing records indicate that a meeting occurred between him, Gracia, and Korn on March 20, 2014, not March 19, 2014. *See* R. 280-3 at Exh. C, Adams Invoices at 20. Moreover, the Court's own notes (the Court takes contemporaneous notes on a laptop during status hearings) show that Korn

C, Adams Invoices at 22. As described, these three trips, as well as the rate charged ($0.56 per mile), were reasonable and necessary.

Gracia's request to recover the $200.00 that Adams advanced to Niemi is denied. As previously discussed, under 28 U.S.C. § 1821, a witness attending federal court is entitled to a fee of $40.00 per day of attendance. Gracia has already sought—and been granted—$40.00 for Niemi's trial attendance. *See* Am. Bill of Costs at 2; *supra* Section III.C. Gracia claims that an additional $200.00 advance was needed to compensate Niemi and his wife for the time they took off work to attend trial, but does not cite any authority indicating that lost wages—in excess of the $40.00 statutory fee—are recoverable. Even if that authority existed, Gracia has not provided enough detail for the Court to figure out whether the $200.00 advance was necessary and reasonable. For example, Gracia does not say where Niemi and his wife were employed, what they made per day, or how many hours they were scheduled to work on the day that Niemi testified.

Gracia's request to recover the $167.00 paid to retrieve the records of prior sexual harassment claims against SigmaTron is also denied. Discovery in this case closed on December 31, 2012, R. 32, though specified and limited document production was allowed through February 8, 2013, R. 33. The sexual harassment records were not retrieved until February 26, 2014. *See* Non-Taxable Cost Documentation at 4. Although it might very well have been reasonable for Gracia to search out other employment discrimination claims against SigmaTron *during* the

---

informed the Court at a status hearing on March 20, 2014 that she was bringing another attorney onto the case. Thus, Adams is seeking mileage to and from a meeting that probably occurred on March 20, not March 19.

discovery period, it was not reasonable to do so 14 months after the close of discovery, when the Court was almost certain to exclude those records from trial as untimely produced.

In addition, Gracia's request to recover the $317.95 paid to Marshall Investigative Services to locate a potential trial witness is denied. Even if Gracia were justified in keeping the potential witness's identity secret from SigmaTron at this stage of the litigation, she was not justified in keeping the witness's identity secret from the Court. Gracia could have provided this information *ex parte* and under seal. Because she failed to do this, the Court does not have the information it needs to determine whether this was a necessary or reasonable expense.

Finally, Gracia's request to recover what Adams paid for postage, photocopying, and parking is also denied. Gracia has not provided any information about what Adams mailed or photocopied, or why he billed Gracia for parking, so the Court cannot determine whether any of these costs were necessary or reasonable.

Altogether, Gracia is awarded $4,871.12 in non-taxable costs, as summarized in this chart:

| Expense | Requested | Granted |
|---|---|---|
| Legal Visual Services Technology Consultant | $4,800.00 | $4,800.00 |
| Attorneys' Mileage Costs | $71.12<br><br>($16.80 + $30.24 + $24.08) | $71.12 |
| Niemi Advance | $200.00 | $0 |
| Retrieval of Prior Sexual Harassment Records | $167.00 | $0 |
| Marshall Investigative Services' Location of Potential Witness | $317.95 | $0 |
| Adams's Postage Costs | $6.70 | $0 |
| Adams's Photocopy Costs | $6.20 | $0 |
| Adams's Parking Cost | $6.00 | $0 |
| | | Total Award:<br>$4,871.12 |

### D. Motion to Maintain the Seal

The last issue to decide is SigmaTron's request to keep specified portions of Gracia's fee motion sealed—in particular, page 4, page 8, Exhibit A, and Exhibit 1 to Exhibit A. According to SigmaTron, this information is "highly sensitive" to both Howard & Howard and SigmaTron. *See* Def.'s Mot. to Seal at 2. This information includes (1) the number of Howard & Howard attorneys that represented SigmaTron; (2) the Howard & Howard attorneys' hourly rates; and (3) the fees SigmaTron has paid Howard & Howard for its defense. *See id.* at 2-3. The Seventh Circuit, however, has emphasized "that litigation [should] be conducted in public to

the maximum extent consistent with respecting trade secrets, the identities of undercover agents, and other facts that should be held in confidence," *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006), *abrogated on other grounds by* Americold Realty Trust v. Conagra Foods, Inc., 136 S. Ct. 1012 (2016); *cf. Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002), and SigmaTron has not cited any authority that supports keeping the information it identifies under seal. For this reason, and because all of those facts do bear on the propriety of Gracia's fee request, SigmaTron's motion to maintain the seal is denied.

## IV. Conclusion

For the reasons stated above, Gracia's motion for fees, R. 280, is granted in part and denied in part. Gracia is awarded $4,427.70 in taxable costs and $4,871.12 in non-taxable costs. Gracia is awarded attorneys' fees at a rate of $500 per hour for Hall Adams, and at rates of $250, $300, $350, and $400 per hour for Kathryn Korn. Gracia is directed to calculate Korn's fees—using the hourly rates set out in this Opinion, and including prejudgment interest for fees earned in 2008-2009 and 2011-2013—and to file the total with the Court by December 7, 2016. SigmaTron should respond with any objections to Gracia's calculations by December 19, 2016. SigmaTron's motion to maintain the seal, R. 281, is denied.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 23, 2016